IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# EASTERN DIVISION.

---

KNOXVILLE, SEPTEMBER TERM, 1892.

---

### HURFORD v. STATE.

(*Knoxville.* September 20, 1892.)

TAXATION. *Privilege tax on sample-sellers invalid as regulation of interstate commerce.*

Revenue Act (1891) imposing privilege tax on persons selling goods to consumers by sample, and declaring it a misdemeanor to do so without payment of this tax, is invalid, as an unlawful regulation of interstate commerce, in so far as it shall be applied to persons, not residents of the State, who, as agents or drummers, take orders in this State from consumers for sale of the goods of their non-resident principal situated outside the State—the orders to be sent to such

non-resident seller, and the goods forwarded by him, in compliance with their terms, to the buyer.

Act construed: Acts 1891, Ch. 25, pp. 65, 74 (Extra Session).

Case cited and approved: 120 U. S., 489.

Cited and distinguished: 145 U. S.

FROM BRADLEY.

Appeal in error from Circuit Court of Bradley County. ARTHUR TRAYNOR, J.

WHITE & MARTIN for Hurford.

Attorney-general PICKLE for State.

LURTON, J. Hurford has been indicted and convicted of a misdemeanor in selling goods by sample to consumers without first taking out the license and paying the privilege tax required by the Revenue Acts of 1891.

He has appealed, and the facts are set out in an agreed statement, from which we quote:

"The defendant, E. B. Hurford, is a citizen and resident of Canton, Ohio, and on May 2, 1892, was engaged in the business of drumming in the city of Cleveland, Tennessee; that is, he was soliciting trade, by the use of samples, for the firm for which he worked as a drummer—said firm being the firm known as the Novelty Cutlery Company,

Hurford v. State.

doing business in Canton, Ohio—all the members of said firm being citizens and residents of Canton, Ohio. The goods which he was selling by sample were what was known as "Novelty Pocket-knives," being a knife with a transparent handle, on which can be placed a photograph or name of owner; if desired. The article is a patented article, manufactured solely by the Novelty Cutlery Company, which is the owner of the patent-right.

"Defendant Hurford was selling the knives or goods directly to the consumers, and all sales were made by sample. All orders were taken in writing. * * * The goods are manufactured by the Novelty Cutlery Company, in Ohio. After the company has received the order, and the articles are manufactured to fill the order, they are shipped, either by mail, registered letter, or by express, or delivered by the agent in person. In some instances, sales are made on time, but this is only in cases where the purchaser buys a large quantity, and is a good, solvent party. In other cases, the order is taken for cash on delivery, and in such cases the goods are sent to him C. O. D., or are carried directly to the purchaser by an agent of the company, who collects the money and delivers the goods simultaneously. All contracts of sales made in Cleveland, Tennessee, were made on the latter plan, though no knives had actually been delivered on the orders taken, in Cleveland, defendant having, up to the time of his arrest, been only engaged in soliciting orders. * * * Defendant always stated to

purchasers that if the goods were not up to the samples, or were not what was ordered, they would not be required to take them. Defendant had not taken out any license or paid any privilege tax, as required by law."

By the Revenue Acts passed at the extra session of 1891, the occupation of "*sample-sellers and solicitors*" was made a privilege, and all persons "selling goods, wares, chattels, or any other character of merchandise to consumers by sample, or taking orders or measures from consumers," were required to take out a license and pay an annual tax, for the privilege, of ten dollars in each county in which business was done. By the same Act, it was made a misdemeanor to exercise any privilege mentioned in the Act without paying the tax and taking out license.

In all its substantial particulars, this case is identical with *Robbins* v. *Taxing District*, 13 Lea, 303. This Court then held that the tax on drummers was not a regulation of commerce between the States, although the agent was a non-resident, who sold, by sample, goods without the State for non-resident principals, and was not, therefore, obnoxious to that clause of the Constitution of the United States which declares that Congress shall have power to regulate commerce between the States. Upon a writ of error to the Supreme Court of the United States, our judgment was reversed and the Act imposing the privilege tax held to be obnoxious to the interstate commerce clause

of the Federal Constitution, in so far as it was sought to apply it to the non-resident agent of non-resident principals, who sold, by sample, goods not within the State at the time of sale. *Robbins* v. *Taxing District*, 120 U. S., 489.

It is of no substantial importance, under that decision, whether the drummer negotiates a sale with a dealer or a consumer, and it is equally unimportant as to how the delivery is to be made. If the order is sent out of the State, and the goods afterwards sent into the State to fill it, it is immaterial whether delivery to the buyer is to be by a carrier, a postmaster, or by an agent of the seller, to whom they are sent for delivery in pursuance of a sale previously negotiated while the goods were without the State. The view of this Court was that such a tax was imposed on the occupation of drumming, and, if it did not discriminate between residents and non-residents, that it was not a regulation of interstate commerce. These views did not meet the indorsement of the Supreme Court of the United States. That Court, with reference to questions arising upon the Constitution of the United States, is the Court of last resort. It is our duty, with respect to such questions, to conform our judgments, where a Federal question arises, to the opinions of that Court. We are, therefore, constrained to hold, in the language of that Court, that "the negotiation of sales of goods, which are in another State, for the purpose of introducing them into the State in

43—7 P

which the negotiation is made, is interstate commerce," and that a tax upon an agent exclusively engaged in making such sales is a tax upon interstate commerce, and obnoxious to the Constitution of the United States.

The case of *Ficklin* v. *State*, 145 U. S., does not govern this case. The facts are altogether unlike. That case was thus stated in the opinion of Fuller, C. J.:

" In the case at bar the complainants were established, and did business, in the taxing district as general merchandise brokers, and were taxed, as such, under Section 9 of Chapter 96 of the Tennessee laws of 1881, which embraced a different subject-matter from Section 16 of that chapter. For the year 1887 they paid the fifty dollars tax charged, gave bond to report their gross commissions at the end of the year, and thereupon received, and, throughout the entire year, held a general and unrestricted license to do business as such brokers. They were thereby authorized to do any and all kinds of commission business, and became liable to pay the privilege tax in question, which was fixed in part, and in part graduated according to the amount of capital in the business, or, if no capital were invested, by the amount of commissions received. Although their principals happened, during 1887, as to the one party, to be wholly non-residents, and, as to the other, largely such, this fact might have been otherwise then and afterwards, as their business was not confined

to transactions for non-residents. In the case of Robbins, the tax was held, in effect, not to be a tax on Robbins, but on his principals, while here the tax was clearly levied upon complainants in respect of the general commission business they conducted, and their property engaged therein, or their profits realized therefrom.

"No doubt can be entertained of the right of State Legislatures to tax trades, professions, and occupations, in the absence of inhibition in the State Constitution in that regard; and where a resident citizen engages in general business subject to a particular tax, the fact that the business done chances to consist, for the time being, wholly or partially in negotiating sales between resident and non-resident merchants of goods situated in another State, does not necessarily involve the taxation of interstate commerce, forbidden by the Constitution of the United States."

In conclusion, that Court said: "We agree with the Supreme Court of the State that the complainants, having taken out licenses under the law in question, to do a general commission business, and having given bond to report their commissions during the year, and to pay the required percentage thereon, could not, when they applied for similar licenses for the ensuing year, resort to the Courts because the municipal authorities refused to issue such license without the payment of the stipulated tax.

"What position they would have occupied if they

had not undertaken to do a general commission business, and had taken out no license therefor, but had simply transacted business for non-resident principals, is an entirely different question, which does not arise upon this record." 145 U. S.

In the case before us, Hurford is a non-resident, he did not undertake to do a general or special commission business, and the tax required from him depends upon a wholly different provision of the revenue law. He took out no license authorizing him to do a general drumming business, and he was solely engaged in selling, for non-resident principals, goods in another State. There is no similarity between this case and Ficklin's.

The Act imposing this tax is, therefore, in conflict with the Constitution of the United States, in so far as it has application to persons making sales of the character of those shown by this record.

Reverse the judgment.