## STATE *v.* SCOTT.

### (*Nashville.* February 17, 1897.)

1. CONSTITUTIONAL LAW. *Interstate commerce.*

A statute violates the commercial clause of the Federal Constitution, and is void, which imposes a privilege tax upon "persons, other than photographers of this State, soliciting pictures to be enlarged outside of this State." (*Post, pp. 256–262.*)

Constitution construed: U. S. Const., Art. I., §8, clause 3.

Act construed: Acts 1895, Ch. 4, Sec. 3 (Ex. Ses.).

2. INTERSTATE COMMERCE. *What constitutes.*

Soliciting pictures to be enlarged outside of the State constitutes interstate commerce, and a tax laid upon persons engaged in that business, whether they be the nonresident principals or their agent, constitutes an illegal burden upon the business itself. (*Post, p. 257.*)

Cases cited and approved: Hurford *v.* State, 91 Tenn., 669; 120 U. S., 129; 153 U. S., 289; 12 Wheat., 444; 127 U. S., 645; 136 U. S., 104; 91 U. S., 278; 9 Wheat., 1; 135 U. S., 108; 141 U. S., 58; 128 U. S., 129; 129 U. S., 141.

Cited and disapproved: Robbins *v.* Taxing District, 13 Lea, 303.

3. STATUTES. *Unconstitutional in part.*

The unconstitutionality of that clause of the Revenue Act of 1895 which imposes a privilege tax on soliciting pictures to be enlarged outside the State, as violating the commercial clause of the Federal Constitution, does not affect any other part of the Act. (*Post, p. 262.*)

Act construed: Acts 1895, Ch. 4 (Ex. Ses.).

State *v.* Scott.

Cases cited and approved: Dugger *v.* Ins. Co., 95 Tenn., 246; Reelfoot Lake, etc., Dist. *v.* Dawson, 97 Tenn., 151.

### FROM DAVIDSON.

Appeal in error from Criminal Court of Davidson County. J. M. ANDERSON, J.

Attorney-general G. W. PICKLE for State.

P. M. ESTES for Scott.

CALDWELL, J. J. M. Scott is under presentment for doing a privileged business without license. The substance of the charge is that he, as agent of the Chicago Portrait Company, a foreign corporation, had solicited and received orders from citizens and residents of Davidson County, Tenn., for the enlargement of pictures, and forwarded them to his principal, at Chicago, Ill., where the work was to be done; and that he, though not himself a photographer in this State, had done this without first paying a privilege tax and obtaining a license, as required by law.

The Judge of the Criminal Court quashed the presentment, and the State has appealed in error.

The presentment is in good form, and was found and returned with the requisite ceremony. This is virtually conceded. But the motion to quash goes

beyond mere matters of pleading and regularity of action by the grand jury. It challenges the law alleged to have been violated, as an illegal interference with interstate commerce. The learned Judge below seems to have entertained that view of the law, and, for that reason, quashed the presentment.

The statute in question provides that "persons, other than photographers of this State, soliciting pictures to be enlarged outside of this State," shall pay, in every county where so engaged, "each, per annum, $25," as a privilege tax (Acts 1895, 2d Ses., Ch. 4, Sec. 3, pp. 579 and 588); and that anyone presuming to exercise the privilege referred to, without first paying that tax, shall be guilty of a misdemeanor, and subject to be fined not less than $50 nor more than $500. *Ib.*, Sec. 17, p. 595.

Is this a valid law? Does it impose a burden upon interstate commerce? When epitomized, it declares the soliciting of pictures in this State, to be enlarged elsewhere, to be a privilege, and requires persons exercising that privilege to pay a prescribed tax. Undoubtedly the thing privileged is the occupation, for the time being, of agents, and the tax is laid upon them directly and without reference to citizenship. That occupation, however, flows from and is a part of the contemplated business between citizens of different States, and those agents are but the representatives of their principals in other States, who pay them for their labor. The contemplation is, that these soliciting agents will take orders from

citizens of this State, and forward them, with the small pictures, to citizens of other States, who will, in those States and for the stipulated price, make enlarged pictures as directed, and send them thence into this State, to or for the persons giving the orders, respectively. Enlargement of pictures by citizens of other States for citizens of this State is the primary matter, though the tax is, in terms, laid upon other persons engaged, as agents, in the promotion thereof.

The process of enlarging involves the making of a larger picture after the image or likeness of a smaller one. When this is done by one person, upon the order of another, and the larger picture is delivered for a consideration, the parties have certainly had a commercial transaction, and if they be citizens of different States, and the picture be made in one State and sent into the other State, as indicated in the statute and averred in the presentment, the transaction, as between the principals, is, as obviously, interstate commerce. The latter is a commercial transaction between citizens of different States, and that is what interstate commerce means. Whether the transaction be conducted directly and entirely by the principals themselves, or in part by the agency of another, is of no consequence; it is interstate commerce in both instances. So there is no room for doubt that the enlargement of pictures referred to in the statute is, to all intents and purposes, interstate commerce.

14 P—17

It may be said, though, and truly, as has been seen, that no tax is, in terms, laid upon the business of enlarging pictures, nor upon the principals engaged in that business, nor upon the product, but only upon soliciting agents. Yet this makes no material difference. It renders the statute neither better nor worse in its ultimate legal effect, the agency of the intermediaries, who are directly taxed, being one of the means by which citizens of other States have commercial intercourse with citizens of this State. Instead of coming into this State themselves to solicit orders, those citizens of other States employ agents to do that for them; and what the agents do has the same relation to and the same effect upon the ultimate and finished transaction as would the same thing if done in person by those citizens of other States. With respect to that particular matter, the agents stand before the law exactly as their principals would stand if they had come on the same mission; and if the agents can be lawfully taxed, so could the principals, and *vice versa.*

These soliciting agents are only representatives in this State of their principals in other States, and any tax laid upon them in their representative capacity is virtually a tax upon their principals (*Robbins* v. *Shelby Taxing District*, 120 U. S., 129; *Brennan* v. *Titusville*, 153 U. S., 289), and a tax upon their principals would be tantamount to a tax upon the business of those principals (*Brown* v. *Maryland*, 12 Wheat., 444; *Leloup* v. *Mobile*, 127 U. S., 645; *McCall*

v. *California*, 136 U. S., 104); and a tax on the business would operate as a tax on the articles themselves (the enlarged pictures) sent into this State. *Welton* v. *Missouri*, 91 U. S., 278.

It must follow, therefore, that the tax here involved, although laid in so many words upon agents soliciting orders for principals in other States, is, in reality, a tax on those principals, on their business, and ultimately on their goods; and, being so, it is necessarily a tax on interstate commerce. Every tax on interstate commerce is a burden on that commerce; and, when imposed by a State law, without the assent of Congress, as in this case, it is illegal, and the law imposing it is obnoxious to the Federal Constitution, and, for that reason, is null and void. No State has an independent right to place any burden upon legitimate commerce between its own citizens and those of other States, nor to curtail that commerce in any degree. Congress is vested with power "to regulate commerce with foreign nations, and among the several States, and among the Indian tribes." Const. U. S., Art. I., Sec. 8, clause 3. This power is complete in itself, and knows no limitations other than those prescribed in the instrument conferring it. *Gibbons* v. *Ogden*, 9 Wheat., 1; *Brown* v. *Maryland*, 12 Wheat., 446; *Leisy* v. *Hardin*, 135 U. S., 108.

It "is necessarily exclusive whenever the subjects of it are national in their character, or admit only of one uniform system or plan or regulation." *Rob-*

*bins* v. *Shelby Taxing District*, 120 U. S., 492, and cases cited. And a failure of Congress to make express regulations in respect of those subjects indicates the intention that they shall be free from any restrictions or impositions from any source whatsoever. *Ib.*, 493, and cases cited; also *Leisy* v. *Hardin*, 135 U. S., 109.

The controlling power of Congress in the regulation of commerce among the States, which is usually and appropriately called interstate commerce, and the lack of independent power in that domain on the part of the States, have been strongly affirmed and explicitly decided in very many cases.

In *Brennan* v. *Titusville*, Mr. Justice Brewer said : "We think it must be considered, in view of a long line of decisions, that it is settled that nothing which is a direct burden upon interstate commerce can be imposed by the State without the assent of Congress, and that the silence of Congress in respect to any matter of interstate commerce is equivalent to a declaration on its part that it should be absolutely free." 153 U. S., 302.

Mr. Justice Bradley, in another case, used this language : "We have repeatedly decided that a State law is unconstitutional and void which requires a party to take out a license for carrying on interstate commerce, no matter how specious the pretext for imposing it." *Crutcher* v. *Kentucky*, 141 U. S., 58.

And in still another case, Mr. Chief Justice Fuller observed : "We have repeatedly held that no

State has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, for the reason that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to Congress.'' *Lyng* v. *Michigan*, 135 U. S., 166.

Several cases involving the validity of State laws, whereby a license or privilege tax was laid upon drummers or soliciting agents, with principals in other States, as in the present case, have been before the Federal Supreme Court in late years ; and in every instance, so far as we are advised, that Court has held those laws to be unconstitutional and void because imposing a burden upon interstate commerce. The following are some of those cases : *Robbins* v. *Shelby Taxing District*, 120 U. S., 489 ; *Asher* v. *Texas*, 128 U. S., 129 ; *Stoutenburgh* v. *Hennick*, 129 U. S., 141 ; *McCall* v. *California*, 136 U. S., 104 ; *Brennan* v. *Titusville*, 153 U. S., 289.

In the first of these cases the decision of this Court (13 Lea, 303), was reversed. Subsequently, when this Court came to consider the case of *Hurford* v. *State*, it adopted the view of that tribunal, and decided that the statute then in question was invalid in so far as it required agents to pay a privilege tax for selling to consumers in this State, by order or sample, any kind of merchandise owned

by their principals in other States—the statute being to that extent a regulation of interstate commerce. 91 Tenn., 669.

That part of the present statute which we have in this opinion held to be unconstitutional and void, because burdening legitimate commerce between citizens of other States and citizens of this State, is but one of many separate and independent provisions contained in an extended revenue Act, consequently, the effect of this decision is to eliminate and expunge the one invalid provision, and leave the others as they stood before. *Dugger* v. *Insurance Co.*, 95 Tenn., 246; *Reelfoot Lake Levee District* v. *Dawson*, 97 Tenn., 151 (S. C., 36 S. W. R., 1048).

Let the judgment be affirmed.