(107 App. Div. 358.)

## BAKER v. D. APPLETON & CO.

(Supreme Court, Appellate Division, Second Department. August 31, 1905.)

1. TRIAL—MOTION FOR VERDICT BY BOTH PARTIES—DIRECTION OF VERDICT.
   Where a verdict is directed by the court, after both parties have requested a direction and the unsuccessful party has not asked to go to the jury, the decision of the court on the facts has the same effect on appeal as if the verdict had been found by a jury.
   [Ed. Note.—For cases in point, see vol. 3, Cent. Dig. Appeal and Error, § 4024; vol. 46, Cent. Dig. Trial, § 400.]

2. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—CONSTRUCTION—WRONGFUL DISCHARGE—LIABILITY OF SUCCESSOR OF EMPLOYER.
   A firm employed plaintiff for a year at an annual salary. He continued in the service of the firm for several years for the same compensation. The firm then formed a corporation, and he worked for it in the same capacity for the same compensation. The corporation passed into the hands of a receiver, and he discharged plaintiff without cause. The receiver transferred the property to a second corporation, subject to the payment of the debts of the first corporation and of the receiver. Held, that plaintiff had a yearly contract of employment with the firm and the first corporation, entitling him to sue the second corporation for his wrongful discharge before the expiration of a year, under the assumption to pay the debts of the first corporation.

Appeal from Trial Term, Westchester County.

Action by William D. Baker against D. Appleton & Co. From a judgment for plaintiff and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and RICH, JJ.

William V. Rowe (William F. Corliss, on the brief), for appellant.

Jabish Holmes, Jr., for respondent.

RICH, J. This is an appeal from a judgment of the trial court in favor of the plaintiff, entered upon the direction of a verdict at

the close of plaintiff's case, and from an order denying defendant's motion for a new trial.

Prior to November, 1883, William H. Appleton, Daniel Sidney Appleton, William W. Appleton, and Daniel Appleton were engaged in business as copartners, under the firm name and style of "D. Appleton & Company," and the plaintiff, who had been the manager of the business of the copartnership at Chicago, Ill., was on the 16th day of November, 1883, employed by William H. Appleton by the year at an annual salary of $5,000, and transferred to the city of New York. He continued with the copartnership firm till March, 1897, when the corporation of D. Appleton & Co. was formed. After that he remained in the employ of the corporation at the same compensation and continued to render the same services, with no new or actual arrangement or agreement, however, as to his compensation or the duration of the term of his employment. On or about March 21, 1900, the corporation of D. Appleton & Co. passed into the hands of a receiver, who on that day discharged the plaintiff and terminated his employment. On September 24th of that year the defendant was incorporated under the laws of the state of New York, and in October said receiver transferred to the defendant in this action all of the assets and property of the corporation that came into his possession—

"Subject, nevertheless, to the payment of the business indebtedness of this company and of J. Hampden Dougherty, as receiver of this company, all of which indebtedness, principal and interest, the party of the second part hereby assumes and covenants to pay as a part of the consideration for this sale and conveyance."

The plaintiff brings this action to recover the unpaid salary accruing during the year 1900, subsequent to his discharge, upon the theory that his original employment by the firm of D. Appleton & Co. was for one year—from December 1, 1883, to December 1, 1884 —and that such contract was continued from year to year, and that in each successive year thereafter he continued in the employ of the firm and first corporation, rendering the same services and receiving the same compensation. At the close of the evidence, counsel for the defendant moved for the dismissal of the complaint upon the ground that there was no proof of an original hiring by the firm of D. Appleton & Co. of the plaintiff for a term of one year; that there was no proof of the hiring by the corporation of D. Appleton & Co., organized in 1897, of the plaintiff for a term of one year; that there was no evidence upon which a presumption of either law or fact could be based as to such hiring by the corporation—which motion was denied and exception taken. Defendant then moved for the direction of a verdict in its favor. The plaintiff also moved for the direction of a verdict. This motion was granted, to which ruling and the denial of his motion counsel for defendant excepted, but did not request the court to submit any question to the jury.

It is the well-settled law of this state that when a verdict is directed by the court, after both parties have requested such direction, and

the unsuccessful party has not asked to go to the jury, the decision of the trial justice upon the facts has the same conclusive effect upon appeal as if the verdict had been found by the jury upon submission of the case to them. Adams v. Roscoe Lumber Co., 159 N. Y. 176, 53 N. E. 805. All facts and inferences necessary to support the judgment, which could fairly have been derived from the proof given, must be deemed to have been found in favor of plaintiff, and our inquiry is limited, on this branch of the case, to the determination of whether such findings are justified by the evidence, to an extent sufficient to support the judgment. Davis v. True, 89 App. Div. 319, 85 N. Y. Supp. 843.

If the action were between the plaintiff and the firm of D. Appleton & Co., there would be no ground for contention, but it is claimed that, granting this, the evidence is insufficient to charge the defendant with the knowledge imputable to the firm, and does not furnish a sufficient or proper foundation for such conclusions of law or fact as is necessary to establish the liability of defendant in this action; and the question thus presented for our consideration is whether the evidence justified the conclusion reached by the trial justice that there was an existing yearly contract between the first corporation of D. Appleton & Co. and the plaintiff, which was renewed yearly during the existence of such corporation and operative and in force at the time of plaintiff's discharge, and, if so, whether the damages sustained by plaintiff by its breach were assumed by defendant when it succeeded the first corporation. As between the plaintiff and the firm, the latter were chargeable with knowledge of the contract made by the plaintiff with one of its members, to the extent of fixing the liability of the firm for damages resulting from its breach. Although the question presented is a close one and not entirely free from doubt, we are of the opinion that the liability assumed by the corporation was not limited to the payment of the existing indebtedness of the firm it succeeded. A fair construction of the instrument under which the property of the firm was transferred to the corporation charges the corporation as matter of law with knowledge of the existing contracts of the firm, and the obligations and liabilities attaching to such contracts were assumed by the corporation. As to such contracts, the effect of the transfer and execution of the instrument referred to was to substitute the corporation in the place of the firm, with all the knowledge that the firm had or was chargeable with regarding them, and with all the liabilities arising therefrom that rested upon the firm.

The corporation became charged with knowledge of the plaintiff's original contract, that it had been renewed from year to year, and that he was then in the employ of the firm under a yearly contract expiring on December 1, 1897, at an annual salary of $5,000; and his retention after that date, under the circumstances disclosed by the evidence, renewed the existing yearly contract, which became operative and binding upon both parties until December 1, 1898. The contract was on each December 1st thereafter renewed by the retention of plaintiff at the same rate of compensation, and at the

time of his discharge was an existing valid contract, by the provisions of which he was entitled to employment by the corporation until December 1, 1900, and to compensation for his services during that period of time at the rate of $5,000 per year. It necessarily follows that his discharge without justifiable cause on March 21, 1900, was a breach of the contract, and for the damages resulting therefrom the first corporation was liable. This obligation and liability the defendant assumed when it succeeded the first corporation.

The learned trial justice was justified in directing a verdict for the plaintiff. The judgment is supported by the evidence, and the order appealed from must be affirmed, with costs.

BARTLETT and WOODWARD, JJ., concur. JENKS, J., not voting.

HIRSCHBERG, P. J. I concur in the view of this case which has been adopted by Mr. Justice RICH. The leading cases in the Court of Appeals on the duration of an indefinite contract hiring are Adams v. Fitzpatrick, 125 N. Y. 124, 26 N. E. 143, and Martin v. New York Life Insurance Co., 148 N. Y. 117, 42 N. E. 416. In the Martin Case it was held that an original hiring where no time was specified was only a hiring at will, notwithstanding the agreement was for the payment of compensation at a yearly rate. In the Adams Case it was held that, where there was a hiring for the fixed period of a year, it would be presumed, on continuance in the employment after the expiration of the year without further agreement, that the parties had assented to renew the engagement for a like period. This is in harmony with the prior decisions of the courts in this state, and the rule asserted has been often followed. Wallace v. Devlin, 36 Hun, 275; Dean v. Woodward, 52 Hun, 421, 432, 5 N. Y. Supp. 593; Ball v. Stover, 82 Hun, 460, 31 N. Y. Supp. 781; Lichtenhein v. Fisher, 87 Hun, 397, 34 N. Y. Supp. 304; Hotchkiss v. Godkin, 63 App. Div. 468, 71 N. Y. Supp. 629; Brightson v. Claflin Co., 84 App. Div. 557, 82 N. Y. Supp. 667. Under these decisions it cannot be doubted that, when the members of the firm incorporated their business in March, 1897, the firm was under a legal obligation to retain the plaintiff in its service that year, being the fourteenth consecutive year of his employment under no other contracts than an agreement for the first year as a fixed and definite period and at an annual salary renewed from year to year by continuance in the service without change in the terms of the employment. As the firm then ceased doing business, it is equally beyond doubt that it remained under a legal obligation to make good to him whatever loss might be sustained by reason of the deprivation of employment nine months before the expiration of the term.

It is conceded that the corporation in March, 1897, on taking over the property and business of the firm, duly assumed its business obligations. The form of the assumption is not disclosed by the record; the parties having stipulated on the trial in general terms that the transaction was accomplished in this way:

"The firm of D. Appleton & Co. wrote a letter to the corporation offering to sell and transfer to that corporation all its assets, business, and property, subject to the payment of the business indebtedness of said firm, and the corporation passed a resolution agreeing to purchase the assets, business, etc., of the firm subject to such indebtedness of said firm to be assumed by the corporation."

The corporation retained the plaintiff for the year 1897 without any agreement between him and it, and credited him upon their books at the end of the year the precise sum which the firm had agreed to pay him as annual salary, and credited it to him as "salary for the year." In view of the nature of the plaintiff's services, and the importance to both parties of an engagement for some definite period; in view of the fact that the transfer of the business was practically only the continuance of it by the same men, and with the same capital, although in an altered form; in view of the fact that the plaintiff's services were continued with the corporation during the remainder of the year 1897, and during subsequent years precisely the same, both in scope and compensation, as they had been rendered for years to the firm; and in view of the manifest object of the general stipulation as to the terms of the transfer of the business—I do not think a court would be warranted in narrowing the expression of "the business indebtedness of the said firm" to the mere debts as such which may have been recorded upon the books, but that, on the contrary, it may be readily found as a fact that the language used, whatever it may have been, was intended and understood by the parties to embrace the contractual obligations of the firm incident to and connected with the conduct of its business, including the firm's business contract with the plaintiff. That contract was presumably of equal benefit to the contracting parties, and, in the absence of anything indicating a contrary intent, the right to the exclusive control of the plaintiff's services for the balance of the year 1897 may well be deemed to have been included among "the assets, business, etc., of the firm," which the corporation acquired by its purchase.

If the corporation thus acquired and assumed the plaintiff's contract with the firm to complete the employment for the year 1897 (as it certainly did carry it out in fact), I cannot see why at the end of that year the corporation was not in the same position logically as if it had made the bargain with the plaintiff for that year's work. It assumed his contract, whatever the terms may have been, and could not without inquiry deny knowledge of the nature and extent of the terms. It was chargeable in any event with the knowledge of such facts as inquiry would have disclosed. Williamson v. Brown, 15 N. Y. 354; Reed v. Gannon, 50 N. Y. 345; Ellis v. Horrman, 90 N. Y. 466; Fruhauf v. Bendheim, 127 N. Y. 587, 28 N. E. 417. If at the end of the year 1897 the corporation desired that the plaintiff should continue his services at will, instead of under an annual contract, good faith required that some notice of announcement should have been made of the change, but he was kept until the receivership in 1900, credited on the books each year with the same annual salary, and on his discharge in that year was clearly

entitled to claim whatever loss might result to him by reason of that act.

That the defendant corporation was created for the purpose of reorganizing the business of the first corporation, and that on the purchase of the property of that corporation from the receiver it expressly assumed all its liabilities of whatever nature, is beyond dispute. The facts are so set forth in the complaint, and, not being denied in the answer, are to be regarded as admitted.