JAMES H. RYAN, etc., v. REED AIR FILTER COMPANY et al.

Middle Section. February 3, 1930.

Petition for Certiorari denied by Supreme Court, June 28, 1930.

J. S. Laurent, of Louisville, and E. J. Walsh, of Nashville, for appellant, Reed Air Filter Co.

James A. Ryan, of Nashville, for appellee, Ryan.

CROWNOVER, J.  This suit was instituted by James H. Ryan, doing business in the name of Ryan Sales Company, of Nashville, Tenn., against the Reed Air Filter Company, a Kentucky corporation, to recover certain commissions in the sum of $8356, together with interest, making a total of $8497.20, alleged to be due under a contract entered into on March 18, 1925, by the terms of which contract the Ryan · Sales Company was appointed exclusive broker or selling agent for the products of the said Air Filter Company in that part of the State of Tennessee east of the Tennessee river, and to be paid out of the commissions on sales of the products as set out in said contract.  ·The sum sued for represented the commission ·on two sales to the Old Hickory plant of the DuPont Rayon Company, a foreign corporation domesticated in Tennessee.  The suit was begun by attachment by garnishment of the balance due and owing by said DuPont Rayon Company to the Reed Air Filter Company on said two sales.

The Air Filter Company answered that the contract entered into between it and the Ryan Sales Company had expired before the dates of the two sales above mentioned, that the contract had expired on March 18, 1926, and that the sales had been made on June 1st and 26th, 1926; that complainant had failed to carry out any of the terms of the contract while it was in existence; that the two orders were not secured by Ryan, but by the defendant independently of the assistance of the complainant; and that the complainant had failed to pay the privilege tax required by the State of Tennessee for carrying on the occupation of broker for building material as required by the Act of 1925, chapter 134, p. 438, and therefore the contract for compensation is illegal and void, and complainant is not entitled to recover said compensation and the suit should be dismissed.

The Chancellor found the facts to be, that the complainant was the agent for the defendant in the territory mentioned and that the employment had not been terminated; that no complaint had been made of any inactivity on the part of the complainant, no successor had been appointed, and employment was not terminated until thirty days after notice given on June 25, 1926; that both parties had acted as if the contract was in force after March 18, 1926; and that the custom in connection with such contracts, which was known or should have been known to the defendant, was to treat the same as if in force until affirmatively terminated.

The Chancellor further found that the sales in question were made in the territory within which the complainant was the acting distributor at the time of such sales; that the orders were procured partly through the activities of the complainant, although he did not actually obtain such orders; and that the defendant is indebted to complainant for commissions amounting to $8497.20.

The defendant appealed to this court and has assigned twelve errors, which when summarized raise only four propositions:

(1) That the court erred in failing to hold that Ryan could not recover because he had not paid a privilege tax for a license to act as broker for building materials.

(2) That the court erred in holding that the contract was in force at the time the two sales were made to the DuPont Rayon Company, and that it was necessary for defendant to give thirty days' notice of the termination of the contract, and that Ryan was the agent and that the orders were procured partly through his activities.

(3) The court erred in permitting the witnesses, Kirkpatrick and Ruth, to prove that there was a custom among such brokers to continue the contract in force beyond the agreed limit until notice of the termination of the contract was given, and in holding that said contract was governed by that custom,

because said alleged custom was contrary to the express, terms of the instrument.

(4) The court erred in holding that defendant was liable to complainant. But if found liable at all, then the court erred in holding that it was liable for more than one-fourth of the commissions less 10% discount on the sales.

James H. Ryan was engaged in the business of manufacturers' agent or broker, sales engineer and specialized contractor in the City of Nashville.

On March 18, 1925, he entered into a written contract with the Reed Air Filter Company, a Kentucky corporation, by which he became broker or sales agent, with the exclusive right to sell the products of said corporation in the State of Tennessee east of the Tennessee river, which contract provides, among other things:

"This agreement is made for the period up to and including March 18, 1926, but may be terminated on thirty days' written notice."

No action was taken by the defendant company to cancel the contract, but after March 18, 1926, both complainant and defendant treated the contract as if it were still in force. The defendant continued to send bulletins and to write letters to Ryan, and to address him as the Reed Air Filter Company, Nashville Office.

The defendant's business was the manufacture and sale of air filter systems for large manufacturing plants, theatres, hotels, etc.

On May 6, 1926, the defendant telegraphed complainant of a prospect of a large sale to the DuPont Rayon Company at Old Hickory, Tenn., a few miles out of Nashville, and that its sales manager, McConnell, would arrive in Nashville on May 7, 1926. Complainant Ryan met McConnell and took him out to the DuPont factories, where they consulted with that company's officials, surveyed the location and made measurements of the air space. They made no sale on that day, but thereafter, on May 25, 1926, an order was mailed to the Reed Air Filter Co., at Louisville, from the DuPont Rayon Company at Old Hickory for its filters, amounting to $15,380, to be installed at Unit #2 of the DuPont Rayon Company at Old Hickory, Tennessee.

On May 26, 1926, the Reed Air Filter Company wrote Ryan of the order and in this letter informed him that it had been necessary to obtain assistance of the Philadelphia and Buffalo offices to help procure the order, and Ryan was advised in the letter that the commission would be divided into three parts and that he would only receive a five per cent commission on the sale. Ryan replied, on May 27, 1926, that this division would not be satisfactory to him. After several letters had passed between them in regard to the commission, on June 25, 1926, the Reed Air Filter Company wrote Ryan that it had found that the contract between them had expired on March 18,

1926, that they were both evidently acting in ignorance of this fact, and therefore they considered that he was entitled to no commissions on the order. The letter stated in conclusion:. "We will not, however, renew or continue the old contract."

On the next day, June 26, the DuPont Rayon Company placed an order for equipment for its plant No. One at Old Hickory, amounting to $28,327. The Reed Air Filter Company, in its letter of July 3 to Mr. Ryan, took the position that he was not entitled to any commission on this order as defendant insisted that the contract had expired.

After some correspondence Ryan instituted this suit to recover commissions on both sales, and he made the DuPont Rayon Company a defendant and attached by garnishment the sum due by that company to the Reed Air Filter Company. The DuPont Rayon Company answered that it owed the Reed Air Filter Company more than the amount claimed by Ryan. The Reed Air Filter Company executed a bond, and was permitted to collect its indebtedness, and the bill was then dismissed as against the DuPont Rayon Company.

■ We are of the opinion that the first assignment of error is not well made, because the transaction was one of interstate commerce, and complainant was not required to pay the state tax to obtain a privilege license.

The section of the Revenue Act relied upon is a subdivision of section 4 of chapter 134 of the Acts of 1925, entitled, "Brokers and Agents for Building and Road Material," and is as follows:

"All persons, firms or corporations acting as the agent or broker of any person, firm or corporation and receiving a commission or brokerage for acting as such agents or brokers shall pay a privilege per annum as follows:" (Then setting out the amount according to population.)

But section 12 of the same Act provides: "Nothing herein shall be deemed to prohibit or interfere with interstate commerce." Plainly the license required is for carrying on a brokerage business in the State of Tennessee, representing Tennessee businesses.

That part of the broker's business which is carried on with non-resident firms or corporations, where the goods are manufactured in another State and delivered to the purchaser f. o. b. at the point of manufacture, under a contract negotiated by the agent in Tennessee, but accepted in the foreign State, to be shipped to Tennessee, is an act of interstate commerce, and is not attempted to be taxed by the aforesaid section.

"It may be stated as a general and positive rule, that a State cannot burden interstate commerce by taxing it, that is, a person or corporation cannot be compelled to pay a tax for the privilege of carrying on interstate business, though of course the State may tax intrastate or domestic business, and when the

same person is engaged in both interstate and intrastate commerce, the intrastate business may be taxed." 5 R. C. L., 796, sec. 120; Osborne v. State of Florida, 164 U. S., 654, 41 L. Ed., 586.

"A contract made by an unlicensed person in violation of the statute is void and unenforceable; and a suit cannot be maintained on such contract." 37 C. J., 260, sec. 138; 17 R C. L., 559, sec. 73; Wender v. Lobertini, 151 Tenn., 476, 267 S. W., 367.

"Statutes are unconstitutional, or at least inoperative, when they attempt to impose a tax on canvassers, solicitors, traveling salesmen, or other agents soliciting orders for non-resident principals, the goods being without the State at the time of sale and the contract of sale being accepted or approved in the state of the principal." 12 C. J., 106, sec. 147; State v. Scott, 98 Tenn., 254, 39 S. W., 1, 36 L. R. A., 461; Hurford v. State, 91 Tenn., 669, 20 S. W., 201; Robbins v. Shelby County Taxing District, 120 U. S., 487, 30 L. Ed., 694.

Where the goods are manufactured in Kentucky and delivered to the purchaser f. o. b. at the point of manufacture, under a contract negotiated by an agent in Tennessee, but accepted in Kentucky, by which contract the seller agreed to furnish an engineer to help lay out and supervise the erection of the air filter system and to make a practical efficiency test thereof, the transaction is interstate commerce, and it is not necessary for complainant to pay the broker's tax and to obtain a privilege license, as it appears that the Reed Air Filter Company did not contract to pay, and in fact did not pay, any part of the cost of construction other than to furnish the engineer.

"A provision in a contract of sale of an artificial ice plant by which the foreign corporate seller agreed to furnish an engineer who should assemble and erect the machinery at the point of destination, and should make a practical efficiency test before complete delivery, is relevant and appropriate to the interstate sale of the machinery, and, therefore, does not justify the courts of the State to which the machinery was shipped in refusing to enforce payment of the purchase price, on the theory that the corporation was doing local business in the State without having first secured the permit made by a state statute a condition precedent to the right to sue in the local courts." York Mfg. Co. v. Colley, 247 U. S., 21, 62 L. Ed., 963.

The principle involved in the case at bar was involved in the aforesaid case. The Supreme Court of the United States expressly stated that it was concerned only with that case before it, that is, with a contract inherently relating to and intrinsically dealing with the thing sold—the machinery and all its parts constituting the ice

plant. The court pointed out that this must be borne in mind in order to make it clear that what was there said did not concern the subject passed on in the case of General R. Signal Co. v. Virginia, 246 U. S., 500, 62 L. Ed., 854, and Browning v. Waycross, 233 U. S., 16, 58 L. Ed., 828.

The Reed Air Filter Company being a nonresident corporation with a nonresident manufacturing plant, and the goods being ordered, accepted and shipped from Louisville, Ky., without the State, directly to the DuPont Rayon Company within the State, no privilege license was required of the Ryan Sales Company or the complainant Ryan for representing the defendant Reed Air Filter Company as agent or broker, and the contract between them is therefore valid and enforceable.

Where a part of the contract was interstate and a part intrastate, the broker can collect for the interstate without complying with the statutes of Tennessee authorizing him to do business in Tennessee. Hollingshead v. Baker, 4 Tenn. App., 362; Sprout v. South Bend, 277 U. S., 163, 72 L. Ed., 833.

But the complainant's insistence that the County Court Clerk's decision to the effect that he was not liable for a broker's license, was conclusive on the parties, is not well taken, and no excuse for his not paying the tax for the privilege license if he was liable therefor. Wicks v. Carlisle, 12 Okla., 337, 72 Pac., 377. The fact that the clerk did not collect the privilege tax required by the statute, is no excuse, and only makes the clerk liable for a penalty. See State v. Cole, 6 Lea, 492.

But, as above stated, we think the transaction was interstate commerce and for this reason he was not liable for the broker's license tax, and the assignment of error must be overruled.

■ It is insisted by defendant that its contract with Ryan had expired before these orders were placed, and that Ryan was not defendant's agent and was not instrumental in getting the orders, therefore he was not entitled to commission.

The twelfth, thirteenth and fourteenth paragraphs of the contract are as follows:

"Twelfth. This agreement is made for a period up to and including March 18, 1926, but may be terminated on thirty days' written notice by either party upon failure to faithfully abide by and conform to the terms and purposes of this agreement. The termination of said agreement shall be effective thirty (30) days after notice has been sent.

"Thirteenth. In the event of the termination of this agreement the distributor shall be paid such commissions as are due in accordance with the agreement on all sales made up to the time his successor is appointed and payment of such commissions

shall be made to the distributor upon full payment by the customer of invoice rendered.

"Fourteenth. When a successor has been appointed, the distributor hereby waives all right and interest in commissions on any sales made thereafter and agrees to turn over forthwith all property of the company, complete and intact."

During the year from March 18, 1925, to March 18, 1926, the contract was not canelled. After March 18, 1926, the defendant and complainant continued the same relations as before. The defendant continued to send bulletins and write letters to complainant, and to address him as "Reed Air Filter Company, Nashville Office." Immediately on receiving an inquiry from the DuPont Rayon Company, defendant communicated with Ryan, and in the negotiations with the DuPont Rayon Company he was treated as if he were the local agent. On June 10th, the defendant wrote Ryan to look into the matter of a new rayon company at Elizabethton, Tenn., and see if they required air filters. On May 12th, the company communicated with him in regard to filters for the American National Bank in Nashville. But on June 25, 1926, defendant company wrote Ryan: "We will not renew or continue the old contract." This was the first notice of the termination of the contract. We are, therefore, of the opinion that the contract was not terminated until July 25, 1926, thirty days after the notice of June 25th.

Where the defendant treated and recognized the contract as being in force after the express limitation stated in the contract, and had requested complainant to help make these sales, and had accepted the orders, it impliedly renewed the contract of employment for another year, subject to the limitation set out in the contract, and is liable for commissions on sales made while it was in force.

A contract of agency may be renewed by implication. 2 C. J., 526, sec. 148.

"A person who has been previously employed by the month, year or other fixed interval, and who is permitted without any new arrangement to continue in the employment after the period limited by the original employment has expired, will, in the absence of anything to show a contrary intention, be presumed to be employed until the close of the current interval and upon the same terms." 1 Mechem on Agency (2 Ed.), 434, sec., 605; Baker v. Appleton, 107 App. Div., 358, cited in Ann. Cas., 1913D 220.

Renewal contracts which merely continue the provisions in existing contracts in force may depend on such contracts for the requisite elements of mutuality and certainty. 13 C. J., 590, sec. 605.

Implied agency has been recognized in Tennessee. Ross v. Gossett, 2 Tenn. App., 233; Cline v. Plyly, 3 Tenn. App., 292.

It follows that, the contract having been renewed by implication for another year, according to its terms, thirty days' written notice was required for the termination of the contract, and the second order having been given and accepted before the thirty days had expired, Ryan is entitled, as a matter of course, to commissions on both orders, and the assignments of error on these propositions must be overruled.

■ Complainant introduced proof to show that there was a custom in this line of business for such contracts to be considered in force, without renewal, until they were terminated by notice, and defendant assigned as error the admission of such testimony, insisting that such custom was contrary to the express terms of the contract and it should not be governed by that custom.

It appears that the parties to this contract kept it alive and in force, and it was not necessary to introduce proof that there was such a custom, as such contract remains in force and effect where the parties have so treated it after the expiration of the time limited, until some affirmative action is taken by the principal to terminate the same.

It was immaterial whether it was the custom of other companies in this line of business to consider the contract in force, as this contract was kept alive by the parties and the defendant is liable for the commissions. This assignment must therefore be overruled.

■ The last assignment of error is that the court erred in holding that defendant was liable to complainant. But if found liable at all, then the court erred in holding that it was liable for more than one-fourth of the commissions less ten per cent discount on the sales.

This is entirely a question of fact and we agree with the Chancellor that the sales originated and were made within the territory of Ryan and the goods installed in the same territory, and we are of the opinion that he is entitled to full commissions under his contract.

It is contended for defendant that these two orders were secured entirely by the efforts of the Reed Air Filter Co., and its other agents, without assistance from James H. Ryan, and, therefore, Ryan is not entitled to any commission.

While a contract may be so worded that an agent cannot claim commission on the business obtained in his territory by the efforts of the principal (2 C. J., 776-7) ; yet in this case the agent had an exclusive contract for this territory, and the principal, on receiving the inquiry, asked the assistance of Ryan and treated him as its agent, and clearly did not intend to exclude him from participating in securing the order, hence defendant is liable as provided in the contract.

But it is further contended that should the court find that the contract was in force and that defendant was liable for some com-

mission, it is liable for only one-fourth of the commissions, as the contract provides that where the order originated outside of complainant's territory and that the sale was actually made by defendant's other agents outside of complainant's territory, to be installed here, he was entitled to only one-fourth of the commissions, and that defendant's agents at Philadelphia and Buffalo were entitled to the balance.

After an examination of the record, we are of the opinion that this contention is not well made, because the first inquiry came from the Old Hickory plant in complainant's territory, the defendant replied and sent literature, wired Ryan that McConnell would visit Nashville and advise him of the prospect. McConnell arrived and Ryan drove him out to the rayon company's plant, they conferred with the DuPont Rayon Company's officials, measured up the space of the two units, McConnell returned home and defendant then submitted prices and a proposition to the Rayon Company, of which Ryan was advised. After consideration and consultation with its engineers at Wilmington, Delaware, orders were prepared for the Old Hickory plant by the Wilmington engineers and approved by the local officials at Old Hickory, which were submitted to defendant at Louisville, were accepted, and the air filter systems shipped directly to the DuPont Rayon Company at Old Hickory, Tenn.

At the suggestion of Reed the agent at Philadelphia conferred with the engineer from Wilmington. After the orders had been accepted and the filters for one unit had been shipped, the DuPont Rayon . Company notified the defendant that it anticipated cancelling the order for the other unit on account of prices, and Reed then employed the services of its agent at Buffalo to aid it with the Buffalo engineers to prevent revocation of the sale contract, but Ryan at no time requested the services of these agents, and in fact the proof is indefinite as to what services these agents actually rendered. One of them and Reed testified that they rendered services, in some vague way, but it is not definitely shown what they did or what influence they brought to bear or tried to exert in the matter; hence we are of the opinion that they are not entitled to a division of the commissions.

Defendant's contention that the commissions should be computed on a basis of ten per cent less than current prices, is not well made, because the contract provides that Ryan should be paid commissions on the invoice price, "as invoiced customer." The net sales made by the defendant to the Rayon Company, "as invoiced customer," in this case were as shown by the invoices, on the first order $15,380, and on the second order, $28,327. If the defendant later allowed the Rayon Company any credits for replacements or discounts on

settlement, Ryan's commissions should not be diminished on that account.

The defendant insists in its brief that the Reed Air Filter Company reserved in its contract the right to adjust all disputes between its agents as to commissions, and that as it had decided that the complainant was not entitled to any commissions, therefore the complainant had no right of recovery. But this clause of the contract is not controlling in this case for several reasons: first, because there was no dispute between the distributors. There is no proof that any other distributor had been paid anything or had hitherto claimed any part of the commission, and the controversy appears to be entirely between the complainant and the arbitrator. Second, there is no assignment of error on this proposition, and it is well settled that one cannot rely upon a defense to put the lower court in error without specially assigning error.

The latter part of paragraph ten of the contract provides that in case of a dispute between distributors as to the division of commission, the manufacturer reserves the right to adjust such dispute. However, the decision of the arbitrator, or the award in this case, is not valid, for several reasons: first, because the defendant did not set up or plead it as a defense, and the insistence seems to be an afterthought raised on appeal. Defendant must specially plead an award in bar in Chancery, 5 C. J., 226, sec. 610; 2 Stand. Ency. Proc,. 666, unless the agreement to submit to arbitration was expressly made a condition precedent to the right of action. 2 Am. & Eng. Ency. of Law, 2 Ed., 573; Norwood v. Stephens, 7 Cold., 1, 7. Second, the alleged decision of the arbitrator was made without notice and without an opportunity to complainant to take proof, and complainant was given no hearing. 5 C. J., 84, 86, 89, 90; 2 Am. & Eng. Ency. of Law (2 Ed.), 650. Where no demand for arbitration is made, it is deemed waived and the right to maintain independent suit is not affected. 2 Am. & Eng. Ency. of Law (2 Ed.), 586; Cole Mfg. Co. v. Collier, 91 Tenn., 525, 529, 19 S. W., 672.

It results that all the assignments of error must be overruled, and the decree of the Chancellor is affirmed. A decree will be entered in this court in favor of the complainant and against the defendant Reed Air Filter Company and the sureties on its appeal bond for $8497.20, with interest from February 7, 1929, together with the cost of the cause, including the cost of appeal, for all of which execution may issue.

Faw, P. J., and DeWitt, J., concur.

## MEMORANDUM OPINION ON PETITION FOR ADDITIONAL FINDING OF FACTS.

This cause is again before us on petition for an additional finding of facts, and, after another examination of the record, we are of the opinion that we should find, in addition to the facts already found by us in our original opinion, that C. A. Bulkley was a traveling consulting engineer on ventilation for the E. I. DuPont de Nemours Co., at Wilmington, Delaware, and made periodic inspections of the various DuPont plants. After obtaining all the necessary information, prices, etc., of the air filter system, as required, by the local agents at the Old Hickory plant, it was necessary for them to submit the matter for approval to the president, L. A. Yerkes, and to have Bulkley and the other engineers on ventilation at the home offices pass upon the merits of the products, technical data, etc., and whether the guaranty was sufficient. After investigation, Bulkley recommended the installation and placed the order with the Reed Air Filter Co., but the actual written order was "issued by J. P. Hannum, dated 5/29/26," which was "approved by A. C. Jones, Purchasing Agent, dated 5/29/26," both of whom were local agents in charge of the DuPont Rayon Company at Old Hickory, Tennessee. This order had typewritten on its face: "Confirming order placed by Mr. Bulkley," and was written out, signed and mailed from Old Hickory, Tenn., and was the order which was filled by the Reed Air Filter Company.

Upon request we further find that the contract sued on in this cause contained, among other things, the following provisions:

"Tenth. On shipments, made by the manufacturer, of products referred to in this agreement, the manufacturer will pay the distributor the following commissions:

"15%    $ 1.00 to 10,000 on net sales as invoiced customer
"17½%  $10,000 to 20,000 on net sales as invoiced customer
"20%    $20,001 and over on net sales as invoiced customer

"This commission, however, is subject to the following conditions:

"A. Where the order is placed, the goods installed and the entire transaction concluded in the distributor's territory—

"Full Commission.

"B. Where the order is placed in the distributor's territory to be installed in outside territory—

"¾ commission to distributor
"¼ commission to distributor at destination.

"C. Where the order is placed and shipped as in 'B' but the outside distributor has contributed in some material way towards securing the order, such as securing a requisition to the

customer's home office, submitted quotations or has other written proof of work on the projects—

"½ commission to distributor

"½ commission to outside distributor.

"D. Where an air filter specification is secured in distributor's territory resulting in sale and signed order in outside territory—

"¼ commission to distributor

"¾ commission to distributor at destination.

"E. Where the specification and order is secured as in 'D' and shipped into another territory—

"¼ commission to distributor.

"¼ commission to distributor at destination

"½ commission to distributor where order is secured.

"F. Where an outside office requests the assistance of the distributor, in securing the approval of a consulting engineer: A change in specification to permit the use of our equipment; or the approval of executives located in his territory, he is to receive ¼ of the commission provided no commission would otherwise accrue to him on the job, the balance of the commission to be divided as previously provided.

"In cases of dispute between distributors as to the division of commission, etc., the manufacturer reserves the right to adjust all such disputes to the best of its judgment, and its findings shall be final and binding on all distributors concerned and the manufacturer or such officers as it may designate are hereby appointed as arbitrators to settle any and all disputes.

"Eleventh. On all sales contracted for at less than current prices to meet special conditions, commissions shall be reduced in the same proportion that the invoice price bears to the current sale price prevailing at the time."

The petition to find that the material sold for which commission is claimed, was sold at ten per cent less than list price, is sustained, as the proof shows that both orders taken from the DuPont Rayon Company were at a price which was ten per cent less than the current list price; therefore, the decree heretofore entered in favor of complainant Ryan in this court will be modified so as to reduce it ten per cent.

Faw, P. J., and DeWitt, J., concur.