GRISWOLD, HALLETTE & PERSONS *v.* JAMES D. DAVIS *et al.*

(*Knoxville.* September Term, 1911.)

1. **BILLS AND NOTES. Payment must be made to the holder or his agent.**

As a general proposition the maker of a negotiable promissory note can satisfy it only by payment to the holder or to his duly authorized agent for that purpose. (*Post, p.* 229.)

Case cited and approved:   Marling v. Nommensen, 127 Wis., 363.

2. **SAME. Same. Payment to unauthorized agent not in possession of the securities does not protect the debtor; burden to show special authority.**

As a general rule the debtor is not justified in paying the principal debt to an agent of the holder who is not expressly authorized to receive it, unless the agent, at the time of payment, has in his possession the securities paid, and makes that fact known to the debtor; and, if the person to whom payment is made is not in possession of the written securities, the burden is upon the debtor to show that the one to whom payment was made had special authority to receive payment, or that he was represented by the creditor to have such authority. (*Post, pp.* 229, 230.)

3. **SAME. Same. Same. Payment to unauthorized agent without apparent authority evidenced by possession of the securities does not protect the debtor.**

One without actual authority to do so, but assuming to act as the agent of another in receiving payment of the principal debt, and who has not the securities in his possession, cannot be deemed to have such authority; and it is indispensable to investing him with such apparent authority that he have the possession of the securities, and that knowledge of such possession be brought home to the debtor at the time of making the payment. (*Post, pp.* 230-233.)

Griswold v. Davis.

Cases cited and approved:  Smith v. Kidd, 68 N. Y., 130; Crane v. Gruenwald, 120 N. Y., 274; Williams v. Walker, 2 Sandf. Chy. (N. Y.), 325; Lawson v. Nicholson, 52 N. J. Eq., 821; Wilson v. Campbell, 110 Mich., 580.

Cases cited, distinguished, and disapproved:  Campbell v. Gowans, 35 Utah, 268; Quinn v. Dresbach, 75 Cal., 159; Morgan v. Neil, 7 Idaho, 629; Spencer v. Wilson, 4 Munf. (Va.), 130.

4. **SAME.**  Purchased and paid for by mutual credits and charges on deposit account of purchaser with seller constitutes an innocent holder, notwithstanding resale before maturity and taking back after maturity.

Where the complainants purchasing a note of the payee had money on deposit with him as banker to their credit, and paid for the same before its maturity by crediting such payee and banker with the value of the note, and by the banker's charging its value against the deposit account, they were purchasers for value and innocent holders; and it seems that where such complainants sold said note to another innocent purchaser for value before its maturity, and after its maturity paid the same and took it back, they will be protected as innocent holders. (*Post, pp.* 227, 233, 234.)

---

FROM McMINN.

---

Appeal from the Chancery Court of McMinn County. —T. M. McCONNELL, Chancellor.

W. D. CARSWELL and D. G. YOUNG, for complainants.

McCROSKEY & PEACE and NORMAN B. MORRELL, for defendants.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

The bill in this case is filed for the purpose of fore-closing a deed of trust upon a tract of 150 acres of land executed by the defendant Davis to one Allen, trustee, for the purpose of securing two notes and the annual interest coupons attached thereto payable to Burr & Knappe. The chancellor refused to foreclose the deed of trust and dismissed complainants' bill. From this decree, they have appealed and assigned errors.

The facts necessary to be stated are that in 1904, the defendant Davis made application to the Georgia Loan & Trust Company, of Macon, Ga., through Allen, for a loan of $1,300. This application was forwarded by Allen to the Georgia Loan & Trust Company through the firm of Smith & Carswell, attorneys of Chattanooga. After abstracts of title were prepared by Allen and passed upon favorably by Smith & Carswell, the Georgia Loan & Trust Company approved the loan, and forwarded to them the deed of trust, together with the notes and interest coupons, and the money to be delivered to Davis through Allen. It appears that at the time Davis made application for the loan there was a mortgage on his farm in favor of Mrs. Bloom for $700, and he owed the First National Bank of Athens about $600, and it was to pay these debts that he desired the money secured by this deed of trust.

In making the abstract of title for Davis, Allen failed to show in the abstract that the mortgage existed in

125 Tenn.—15

favor of Mrs. Bloom. At the request of Allen, Smith & Carswell forwarded the money for Davis to him by express. When Allen received the money, he turned over $602.95 to Davis and stated at the time that the balance of the $1,300 had not come, and that Mrs. Bloom would have to wait, but that Davis could take the $600 and pay the debt due the bank. This was done. The notes were dated September 1, 1904, and were due September 1, 1907, with interest payable annually. The interest coupon on the $600 note was $36. Davis paid this first coupon to Allen by delivering to him $34.50, which Allen accepted with some explanation to Davis that is not shown in the record. Allen paid the interest coupon on both notes by remittance to the Georgia Loan & Trust Company of the sum due. Before the maturity of the notes secured by the deed of trust, Davis negotiated a sale of his farm to the defendant Hicks. He made known to Allen his sale to Hicks, stating that it was a condition of the trade that the deed of trust to secure Burr & Knappe and the mortgage in favor of Mrs. Bloom should be paid off and satisfied of record. Allen agreed to accept from Davis the $600 which he paid him at the time the loan was made, but stated that he did not have in his possession either the deed of trust or the two notes that Davis had previously executed in favor of Burr & Knappe; and that he could not get possession of the securities and deliver them to Davis before the following September, at which time an interest payment was due. Allen agreed, however, to satisfy the deed of trust upon the margin of the record. This was done by

Davis paying the $600 to Allen and Allen indorsing upon the margin of the record where the deed of trust was recorded that he (Allen) was the holder of the notes secured by the deed of trust, and he acknowledged payment of the same and satisfaction of the deed of trust. This was all explained to Hicks, and upon this satisfaction of the deed of trust, Hicks paid the purchase price to Davis, and Davis paid off the mortgage to Mrs. Bloom.

While the Georgia Loan & Trust Company negotiated the loan with Davis, through Smith & Carswell and Allen, and passed upon its desirability, the money which was advanced upon the deed of trust was furnished by Burr & Knappe, and the notes were made payable and delivered to them as payees. On the 29th of September, 1904, Burr & Knappe sold the two notes to Griswold, Hallette & Persons for full value and indorsed them without recourse. Burr & Knappe are bankers and brokers in the city of Bridgeport, Conn., and the complainants carry an account with them as bankers. The complainants are brokers and are regular customers of Burr & Knappe. Payment was made by Burr & Knappe charging the account of complainants with the purchase price of the notes and the complainants crediting the account of Burr & Knappe with like amount. The complainants sold the notes to A. W. Healy for full value and before due. After the notes became due, the Georgia Loan & Trust Company notified Burr & Knappe that the notes would be paid upon presentation, and Burr & Knappe in turn notified the complainants, who likewise

notified Healy. Healy brought the notes to complainants and received payment in other securities for their full value. This was after their maturity. The notes were forwarded to the Georgia Loan & Trust Company, and demand of payment was made upon due presentation, which was declined.

Allen represented himself to Hicks as the agent of Burr & Knappe and executed receipts to Hicks for sums reecived as such agent. Burr & Knappe knew nothing of Allen and were never informed that Allen was receiving moneys from Davis pretending to be their agent. Interest was forwarded by Allen to the Georgia Loan & Trust Company, and by that company to Burr & Knappe, and Burr & Knappe would pay interest received to the holder of the notes at the time. There is nothing to indicate that they ever knew any fact that would suggest to them that Allen was pretending to be their agent or that he had failed to deliver to Davis the entire amount loaned by them, or that Davis had undertaken to pay back the $600 reecived from Allen, or that Allen had undertaken to satisfy the deed of trust until after the maturity of the notes and just before the filing of this bill.

Upon these facts, it is said in support of the chancellor's decree: First, that Allen was the agent of Burr & Knappe, and as such was authoried to receive the $600 repaid to him by Davis, and also that his failure to pay over to Davis the full amount of the loan was the failure of Burr & Knappe; and, second, that the complainants are not purchasers for value in due course of trade, and

Griswold v. Davis.

therefore they hold the securities subject to the defenses that might be interposed to them in the hands of Burr & Knappe. As a general proposition, the maker of a negotiable promissory note can satisfy it only by payment to the holder or to his duly authorized agent for that purpose. *Marling* v. *Nommensen,* 127 Wis., 363, 106 N. W., 844, 5 L. R. A. (N. S.), 412, 115 Am. St. Rep., 1017, 7 Am. & Eng. Ann. Cas., 364.

It is not claimed that Allen was especially authorized by Burr & Knappe to receive payment of the notes in question. The insistence is that Allen, having acted for them in making the application for the loan, in appraising the property, and in preparing the abstracts of title, and also in receiving payment from Davis of one interest coupon, that this authorized Davis to rely upon the representations of Allen that he was such agent, and, though not directly authorized by his principal to receive payment, he was acting within the apparent scope of his authority.

We are of opinion that as a general rule the debtor is not justified in paying the principal debt to an agent of the holder who is not expressly authorized to receive it, unless the agent, at the time of payment, has in his possession the securities paid and makes the fact known to the debtor, and, if the person to whom payment is made is not in possession of the written securities, the burden is upon the debtor to show that the one to whom payment was made had special authority to receive payment, or that he has been represented by the creditor to have such authority. There can be no basis for the debt-

or relying upon the apparent or ostensible authority of an agent not in possession of the written securities to receive payment. The mere act of paying the principal debt to one not the holder of negotiable instruments, and not in possession of them, is such gross negligence upon the part of the debtor that it is difficult to conceive how he could rely upon an apparent or ostensible authority of such agent to receive the payment. Possession of the securities properly indorsed of itself, and in the absence of countervailing facts, clothes the agent with apparent authority to receive payment from and deliver them to the debtor. And the absence of the securities in the hands of the alleged agent is such a powerful circumstance of want of authority, that one making payment to him cannot claim that he appeared to have authority to receive payment, when in fact he did not.

Agency rests upon contract between the principal and the agent. This contract cannot be made to appear to a third party by the declarations of the agent only, nor can the principal be held bound by a course of conduct upon the part of the agent unknown to him. For the acts of his agent within his express authority, the principal is liable because the act of the agent is the act of the principal. For the acts of the agent within the scope. of the authority which he holds the agent out as having. or knowingly permits him to assume, the principal is made responsible, because to permit him to dispute the authority of the.agent in such case would be to enable him to commit a fraud upon innocent persons. The same principle of equity which forbids the principal to

deny responsibility for the acts of his agent within the scope of his apparent authority requires that the party dealing with the alleged agent shall show that he was aware of the acts from which the apparent authority is deduced, that he acted in reliance upon them, and that he did not act negligently, but used reasonable means to ascertain whether the power was possessed by the agent, and that in good faith he believed the agent was especially authorized to do the thing.

All of the authorities are in substantial accord with the views herein stated. Some of the cases seem not to distinguish between payment to an agent without authority, but claimed to be acting within his apparent authority, and an agent specially authorized to receive payment. Expressions can be found in those cases to the effect that such an agent so receiving payment of the principal loan can still be found to have had implied authority to receive the payment, and the absence of the securities from his possession is merely a circumstance to be considered in connection with all the facts. *Campbell* v. *Gowans*, 35 Utah, 268, 100 Pac., 397, 23 L. R. A. (N. S.), 414. But an examination of the facts of these cases will show that the courts found that the agent was authorized to receive the payment, or else the principal, by his course of dealing with the debtor through the alleged agent, had estopped himself to deny the authority of the agent, or had ratified his act. *Quinn* v. *Dresbach*, 75 Cal., 159, 16 Pac., 762, 7 Am. St. Rep., 138; *Morgan* v. *Neil*, 7 Idaho, 629, 65 Pac., 66, 97 Am. St., Rep., 264.

But, as we have said, the better rule supported by the greater weight of authority is that one without actual authority to do so, but assuming to act as the agent of another in receiving payment of the principal sum due, who has not the securities in his possession, cannot be deemed to have such authority. It is indispensable to investing him with such apparent authority that he have possession of the securities, and that knowledge of such possession be brought home to the debtor at the time of making the payment. *Smith* v. *Kidd,* 68 N. Y., 130, 23 Am. Rep., 157; *Lawson* v. *Nicholson,* 52 N. J. Eq., 821, 31 Atl., 386; *Crane* v. *Gruenewald,* 120 N. Y., 274, 24 N. E., 456, 17 Am. St. Rep., 643; Jones on Mortgages, section 964; Meacham on Agency, section 373; *Wilson* v. *Campbell,* 110 Mich., 580, 68 N. W., 278, 35 L. R. A., 544; *Williams* v. *Walker,* 2 Sandf. Ch. (N. Y.), 325.

In the case last cited, the learned assistant vice chancellor reviewed the English and American authorities at very great length, commencing with *Henn* v. *Connisby,* Cases in Chancery, 93, decided in 1668, and reviewed each case down to the date of the decision in 1845. He found perfect harmony in all of the authorities except the single case of *Spencer* v. *Wilson,* 4 Munf. (Va.), 130, and this case he criticised "as either carelessly reported or was a loose decision." This case is often cited by the various courts, and it appears to be a leading case upon the subject. The rule is there stated as follows:

"The debtor is authorized to infer that the solicitor or agent is empowered to receive both interest and principal, from his having possession of the bond and mort-

gage. . . . But such inference, being founded upon the custody of the securities, ceases whenever they are withdrawn by the creditor; and it is incumbent upon the debtor, who makes payment to the solicitor or agent, relying upon such inference, to show that the securities were in his possession on each occasion when the payments were made."

The rule here adopted is not only supported by reason and authority, but it is easiest understood and followed in actual practice. It requires only the most natural and prudent thing for a debtor to do in the matter of paying the principal debt, and makes him responsible for his gross negligence. It tends to prevent the alleged agent from practicing fraud both upon the debtor and the creditor and will make certain such payments and minimize litigation.

While what has been said is conclusive of the entire case for the reason that payment to Allen was not a payment to Burr & Knappe, it is proper to dispose of the second contention of defendant's counsel. It is said that the complainants, having taken the paper from Healy after its maturity, and not having paid value for the same at the time of their purchase from Burr & Knappe, are not innocent holders of the notes sued on for value. This contention is based upon the statement of complainants to the effect that, at the time they purchased the notes from Burr & Knappe, they had money on deposit with them to their credit, and the value of the notes was credited by them to Burr & Knappe against this deposit, and likewise was charged by Burr

& Knappe to the complainants. It is sought to bring this case within the authority of *Banking Co.* v. *Hall,* 119 Tenn., 548, 108 S. W., 1068. In that case the notes in controversy were purchased by the Elgin City Banking Company from W. S. Dunham, and were paid for by the cashier of the Elgin City Banking Company placing the amount paid for the notes to the credit of Dunham at the First National Bank of Elgin. It was held that it was not shown that the credit given to the Dunhams in the First National Bank was ever used by them, and therefore the court could not determine whether the credit was real and substantial. However, this case is the converse of the *Hall Case.* The complainants had money on deposit with Burr & Knappe, and, when they purchased the notes sued on, they credited the account of Burr & Knappe with the purchase price, and Burr & Knappe in turn charged their account with like amount. Neither party had the power after the entry of the debit and credit items in this transaction to change them. The complainants had suffered the loss of their credit, and Burr & Knappe had received the benefits of it as effectually as if the money had actually passed. The result is that the decree of the chancellor is reversed, and a decree will be entered here for the complainants.