SHENOY *v*. PHIPPS.

Opinion delivered July 12, 1920.

1. VENDOR AND PURCHASER—BONA FIDE PURCHASER.—In a suit to foreclose a lien for the unpaid purchase price of land sold in a partition suit, evidence *held* to sustain a finding that defendant was a *bona fide* purchaser for value without notice.

2. VENDOR AND PURCHASER — BONA FIDE PURCHASER — BURDEN OF PROOF.—Generally, when a party relies on the defense of being a *bona fide* purchaser and shows that he has paid a valuable consideration, the burden of showing that he purchased with notice is upon the party alleging it, or who relies on notice to defeat the claim of the *bona fide* purchaser.

3. VENDOR AND PURCHASER—EVIDENCE OF PAYMENT.—In a suit to foreclose a lien for the unpaid purchase price of land sold for partition, evidence *held* to warrant finding for defendant that no part of the purchase price on such sale remained unpaid.

4. DEPOSITIONS—WHO MAY READ.—Where a deposition was taken pursuant to an agreement between attorneys for the parties, it did not fall within the rule that a party to an action has no right to read a deposition taken by his adversary, and either party had a right to read it to the jury.

Appeal from Garland Chancery Court; *C. Floyd Huff,* Special Chancellor; affirmed.

### STATEMENT OF FACTS.

Rachel Shenoy and Mollie Jackson brought this suit in equity against Harold H. Phipps to foreclose a lien for the unpaid purchase price of the east half of lot 11, block 70, in the city of Hot Springs, Garland County, Arkansas. Phipps defended on the ground that he was *bona fide* purchaser of the property for value, and that the purchase price had been paid. Caroline Jones died owning the property and left surviving her four children, viz.: Mollie Jackson, Elmira Jackson, Hannah Norman, and Rachel Shenoy. She devised the property in question to the first three named children, having given the other half of the lot to Rachel Shenoy. After the death of Caroline Jones, Mollie Jackson, Elmira Jackson and Hannah Norman brought suit for the partition of said property. It was ordered sold by the chancery court for the purpose of division. Under the terms of the decree the commissioner was ordered to retain a lien on the property for the purchase money. Hannah Norman became the purchaser at the sale, having bid for the property the sum of $2,200. Subsequently the commissioner executed to her a deed to the property. The deed contains a recital as follows:

"In order to carry into effect the sale made as aforesaid in pursuance to the decree of said chancery court in consideration of the premises, and the said sum of $2,200, hath granted, bargained and sold," etc.

Subsequently, the commissioner appeared in open court and acknowledged the execution of the deed, and

the sale was in all things confirmed and approved by the court. The sale. was approved in open court on the 17th day of July, 1950. Afterward Elmira Jackson died, and Rachel Shenoy was the sole legatee under her will.

According to the testimony of Rachel Shenoy and Mollie Jackson, Hannah Norman only paid to her sisters $500 each of the purchase price. This left $700 to be divided equally between the three sisters, including Hannah Norman.

R. G. Davies, their attorney in the partition proceedings, testified that Hannah Norman did not pay the purchase price of the lot at the time she purchased it; that he left the State soon afterward and was gone four or five years; that some time after his return Mollie Jackson employed him to collect the balance of the purchase price.

D. W. Carr testified that he bargained with Major Pemberton for the property; that Major Pemberton had purchased it from Hannah Norman; that Hannah Norman had sold it to him to get the money with which to pay her two sisters the balance of the purchase price; that he sold his claim to the defendant, Phipps, and that the latter knew at the time he purchased the property that Hannah Norman's sisters claimed that there was a balance due them on the purchase price.

The defendant Phipps was a witness for himself. According to his testimony, he paid Major Pemberton full value for the property and purchased it without any notice that the plaintiffs claimed there was a balance due on the purchase money from the chancery sale in partition. Phipps entered into possession of the property in 1914, after he had purchased it, and has been in possession of it ever since.

Other evidence will be stated or referred to in the opinion.

The chancellor made a general finding in favor of the defendant, and a decree was entered accordingly. To reverse that decree, the plaintiffs have duly prosecuted this appeal.

*R. G. Davies,* for appellants.

Defendant Phipps was not an innocent purchaser for value. The purchaser of real estate is bound to take notice of all recitals in his chain of title and to investigate same. 40 Ark. 108.

*A. Curl,* for appellee.

An examination of the decree shows that appellant and all other interested parties were before the court and all interests were adjusted and the east half of lot 11 ordered sold for the purpose of partition among the owners and that a commissioner was appointed to make the sale. The testimony was taken by agreement and on behalf of plaintiff, and either party could read it. 15 Ark. 345; 85 *Id.* 263. If appellant had a cause of action against anyone, he has been guilty of such laches as to forever bar him.

Hart, J. (after stating the facts). We think the chancellor was warranted in holding that Phipps was a *bona fide* purchaser for value without notice. Phipps' testimony to the effect that he paid full value for the property to Major Pemberton is undisputed. He also testified that he purchased the property without any notice whatever of the claim of the plaintiffs that a part of the purchase price from the chancery sale in the partition proceedings remained unpaid. It is true that his testimony on this point is disputed by that of D. W. Carr. The general rule is when a party relies upon the defense of being a *bona fide* purchaser and shows that he has paid a valuable consideration, the burden of showing that he purchased with notice is upon the party alleging it, or who relies on the notice to defeat the claim of the *bona fide* purchaser. *White* v. *Moffett,* 108 Ark. 490, and *Jones* v. *Ainell,* 123 Ark. 532. There was nothing in the commissioner's deed to indicate that any of the purchase money remained unpaid.

On the other hand, it is fairly inferable from the recital which we have copied in our statement of facts and from the fact that the court confirmed and approved the

sale, that the purchase price had been paid. The very purpose of making the sale was to divide the proceeds thereof among the three sisters who owned the land.

Moreover, the chancellor was warranted in finding that no part of the purchase price remained unpaid. It is true that the plaintiffs testified in a general way that Hannah Norman only paid $500 each on the purchase price to her two sisters and that the balance of the purchase price due them was not paid. Their attorney in the partition proceedings also testified that the purchase price was not paid at the time. He frankly admits however that he left the State soon afterward and when he returned four or five years later the matter had passed out of his mind.

Hannah Norman testified, however, that she paid the purchase price before the sale was confirmed and approved by the court. The plaintiffs admitted that she sold the property to Major Pemberton for money with which to pay her two sisters that part of the purchase price due them. It will be remembered that the sale was confirmed in July, 1905. The present suit was not instituted until the 22d day of March, 1919. No explanation is given of this long delay. The sale was made for the purpose of dividing the proceeds between the owners of the property sold. The sale was approved and confirmed by the court. The commissioner's deed does not contain any recital that any part of the purchase money is unpaid. On the contrary, it recites that in consideration of the premises and the said sum of $2,200 that the commissioner has granted, bargained and sold the property. This would seem to indicate that the purchase price had been paid. In any event, when the long lapse of time since the sale, with the attendant circumstances are considered, it can not be said that a finding by the chancellor to the effect that the purchase price had been paid is against the preponderance of the evidence.

It is insisted, however, that the evidence of Hannah Norman to the effect that she paid the purchase price can not be considered because her deposition was taken

by the plaintiffs, and counsel invokes the rule that a party to an action has no right to read a deposition taken by his adversary.  Her deposition was taken pursuant to an agreement between the attorneys for the respective parties, and therefore did not fall within the rule invoked by counsel for the plaintiffs.  The deposition, having been taken by agreement, became the property of both parties and either party had the right to read it to the jury. *Western Union Telegraph Co.* v. *Hanley,* 85 Ark. 263.

It follows that the decree must be affirmed.