## B. E. CLINE v. C. M. PLYLY, et al.

### Eastern Section. July 3, 1926.

Petition for Certiorari denied by Supreme Court, October 13, 1926.

1. Estoppel. Estoppel defined.
   In general the rule of equitable estoppel is that where one by his acts, declarations or silence, where it is his duty to speak, has induced another in reliance on such acts, declarations or silence to enter into a transaction, he shall not, to the prejudice of a person misled, impeach the transaction.

2. Estoppel. Evidence held to show no estoppel.
   In an action on a note where the maker of the note had paid the note to the original payee who had before maturity, transferred the note to an innocent purchaser who knew nothing of the payments, held there could be no estoppel.

3. Evidence. To establish an implied agency the custom and manner of the parties doing business may be shown.
   In an action on a note where it was sought to establish that the party receiving the payment was the agent of the holder, held the defendant had the right to prove the manner and custom of doing business between the parties.

4. Principal and agent. One can not become an implied agent unless the principal knows and without objection, permits the agent to act.
   To make one a general agent by implication, it should be shown that not only had he assumed such general agency, but that the circumstances were such as to indicate to the principal that the one assuming to act as agent was assuming to act as his general agent and that he had acquiesced in such assumption.

5. Bills and notes. One paying a negotiable instrument before maturity must see that the payments are received by the holder of the instrument.
   As a general rule the debtor is not justified in paying the principal debt to an agent of the holder who is not expressly authorized to receive it, unless the agent, at the time of the payment has in his possession the securities paid and makes the fact known to the debtor, and, if the person to whom payment is made is not in possession of the written securities, the burden is upon the debtor to show that the one to whom payment was made had special authority to receive payment, or that he has been represented by the creditor to have such authority.

6. Principal and agent. Agency rests upon the contract between the principal and the agent.
   Agency rests upon contract between the principal and agent. This contract can not be made to appear to a third party by the declarations of the agent only, nor can the principal be held bound by a course of conduct upon the part of the agent unknown to him.

7. Bills and notes. Evidence held not to show payment.
   In an action on a note where the maker paid the note to the original payee and who purported to then hold the note, but in fact had sold it before maturity to an innocent purchaser who had not authorized him to collect it, held the instrument was not satisfied and the holder could recover.

Appeal from Chancery Court of Knox County; Hon. Chas. Hays Brown, Chancellor.

Affirmed and remanded.

A. J. Graves and S. E. Hodges, of Knoxville, for appellant.

J. Alvin Johnson, O. L. White and Frantz, McConnell & Seymour, of Knoxville, for appellee.

SNODGRASS, J. On the 20th day of August, 1918, one T. E. Plyley borrowed the sum of $5000 from S. R. Rambo. The indebtedness was represented by five promissory notes, all dated August 20, 1918. All these notes were negotiable, falling due and payable three years after date, to S. R. Rambo. To secure the payment of the notes the said T. E. Plyley and wife, L. B. Plyley, conveyed to defendant W. L. Jack, Trustee, the three parcels of land described in the bill.

In the trust deed the Central avenue property is described as Parcel No. 1, Lot No. one in Block P of Island Home Park is described as Lot 2, and Lot No. two in Block P in said Island Home Park Addition is described as parcel No. 3.

On or about the 20th of August, 1918, a few days after the execution of these notes, the complainant purchased one of these notes in due course and for value, from Rambo, it has been in his possession ever since, and up to the bringing of this suit to collect this note.

T. E. Plyley and wife, who executed the notes and the deed of trust to secure their payment, have since died, and this suit is against his executor, C. M. Plyley. The bill alleges that T. E. Plyley owned the property at the time of his death, and that it passed by his will to his said executor and Essie M. Galbraith, who is also made party.

Subsequent to the execution of the foregoing notes and deed of trust there was the usual payment to Rambo of the note in question and a release of record of two of the tracts, in the following words:

"I declare that I am the true and lawful holder of the claim secured by the instrument within recorded, and hereby acknowledge the satisfaction thereto and discharge of all lien as to 2 & 3 parcels, but no further or otherwise to secure the same in full. This 21 day of June, 1923. (signed) S. R. Rambo, by T. L. Brown. Attest: C. M. Oglesby, Deputy Register."

Relief was sought against said executor individually also, as it was alleged in the bill that on the 26th day of October, 1923, the said T. E. Plyley had conveyed to the said C. M. Plyley Lots One and Two in said Block P, the deed to which it was said appeared of record in Knox County, Tenn. in the Register's Office, in Deed Book 386, page 353.

The bill also alleges that the said T. E. Plyley, who was then a widower, on the 4th day of May, 1923, borrowed $1500 from S. R. Rambo & Co., a corporation, and conveyed the Central Avenue property above described in trust to the defendant Union Trust Co., Trustee, to secure the payment of said indebtedness, which was repre-

sented, it was alleged, by two promissory notes dates May 4, 1923, due one year after date, one for $1000 and the other for $500, both payable to S. R. Rambo & Co.

The bill further alleged that on the 1st day of May, 1923, the said T. E. Plyley, then a widower, borrowed the sum of $7500 from the defendant Bankers Trust Co., the said indebtedness being represented by one promissory note dated May 1, 1923, and due and payable May 1, 1926, and that to secure the payment of this note the said T. E. Plyley conveyed in trust to defendant J. A. Wallace Lots Numbers One and Two in said Block P in the Island Home Park Addition to Knoxville.

The bill then showed that S. R. Rambo and S. R. Rambo & Co. were in bankruptcy, and that the defendant John A. Ayers was the trustee in bankruptcy for S. R. Rambo & Co., and defendant John Rogers was the trustee in bankruptcy of S. R. Rambo. While the bill professes not to know the present status of the claims thus subsequently originating, it makes them all parties, averring the validity of the note held by the complainant, who it was averred was an innocent holder and owner of the note in due course and for value, and that the interest on the note had been paid by Rambo up to and including the 20th day of February, 1924, but that there was due on the note the principal of $1000 and interest to date of $20, and an attorney's fee of ten percent provided for in the note, making in all at the time the bill was filed the sum of $1122.

On the back of said note appears the following endorsement:

> "The undersigned indorser of this note hereby guarantees payment of principal and interest of this note, and all costs of collection. S. R. Rambo."

While the bill does not undertake to account for the other four one thousand dollar notes secured by the original mortgage, it being averred that complainant did not know whether they had been paid or not, it averred the bona fides of the one in question and the claim as validly outstanding in complainant, and that the said trust deed to defendant Jack to secure said note was a valid deed; that the attempted release was unauthorized, and seeks to collect said note, with attorney's fees and interest and to foreclose the lien as evidenced by said trust deed, which it was averred was superior to any lien or claim of title by defendants.

Pro confesso was taken against defendants C. B. Johnson and wife, J. H. Johnson, John Rogers, Trustee and Essie M. Galbraith. The other defendants filed answers, proof was taken and the cause was heard before the chancellor, who gave the complainant a decree against the estate of T. E. Plyley, deceased for the sum of $1000, with interest from February 20, 1924 amounting to $115, and ten per cent attorney's fees, amounting to $111.50, making a total of $1226.50 at the date of the decree, together with all costs of the cause,

and decreeing also that complainant was entitled to have the trust deed made to secure the note foreclosed for the purpose of satisfying the amount of the decree.

The court held that the trust deed to J. A. Wallace, trustee dated May 1, 1923, securing $7500 to Bankers Trust Co. conveying the 2nd and 3rd parcels described in trust deed of August 20, 1918, is second and inferior only to the trust deed securing complainant's note, and that the amount due the Bankers Trust Co., the holder of said $7500 note, is to be paid from the money realized from the said of said 2nd and 3rd parcels described in said trust deed of August 20, 1918, after the amount due on the notes secured by said trust deed of August 20, 1918, has been paid. That Henry R. Gibson is the owner and holder of the two notes secured by the trust deed to the Union Trust Co., dated May 4, 1923, which now, with attorney's fees and interest, amount to $1845, which trust deed conveys parcel No. 1 as described in said trust deed of August 20, 1918, which trust deed of May 4, 1923, is subject and inferior only to said trust deed of August 20, 1918, involved in this cause, as the said 2 and 3 parcels described in said trust deed of August 20, 1918, are not included in the description in said trust deed dated May 4, 1923.

And it further appearing to the court that suits were then pending undetermined in his court to collect the other four one thousand dollar notes secured by the trust deed of August 20, 1918, in which defendants have plead that T. E. Plyley paid said notes, and that S. R. Rambo and S. R. Rambo & Co. were the agents of complainants, it was ordered and decreed that said first parcel of property described in said trust deed of August 20, 1918, be sold separate from the 2nd and 3rd parcels of property described in said trust deed, and the amount realized from the sale of the first parcel· and the amount realized from the sale of the 2nd and 3rd parcels shall be evidenced by separate notes, and kept by the clerk and master as separate funds, so that the notes secured by said trust deeds can be satisfied in the order in which they are entitled to the proceeds from the sale of said property.

It was therefore ordered, adjudged and decreed by the court that unless the amount of this decree is paid into court within thirty days, the clerk and master will sell the property, Parcel No. 1 separately, and parcels 2 and 3 together, at public auction, to the highest and best bidder for cash, and in bar of the equity of redemption, as provided for in the face of the trust deed, and as prayed for at the bar and in the original bill, after giving the notice prescribed by law, and after giving notice of the time, terms and place of sale, by posted notice in front of the North door of the Court House, in Knox county, Tennessee, at least fifteen days previous to said sale, as provided in said trust deed. The decree then set out a specific description of said first and second and third parcels and reiterated the direction as

to selling the first separately and apart from the other parcels, taking separate notes and keeping the funds separate.

To all of which action of the court the defendants, C. M. Plyley, Executor of the estate of T. E. Plyley, deceased, the estate of T. E. Plyley, deceased, J. A. Wallace, Trustee, and Bankers Trust Co. then and there excepted, and prayed an appeal to this court, which appeal in the exercise of the discretion of the court was granted, in advance of the sale ordered, upon said defendants C. M. Plyley, Executor of the Estate of T. E. Plyley, deceased and the estate of T. E. Plyley, deceased filing an appeal bond in the sum of $250, or otherwise complying with the law, and the defendants J. A. Wallace, Trustee and Bankers Trust Company were likewise granted an appeal upon condition that they file an appeal bond in the sum of $250 or otherwise complying with the law, and they were given thirty days in which to perfect the appeals. The bonds were accordingly filed within the time, and the defendants have filed a joint assignment of errors, as follows:

"I. The chancellor erred in holding that the complainant is entitled to collect the note and has a lien upon the property and is entitled to foreclose the trust deed and sell said property.

(a) The chancellor erred in holding that S. R. Rambo and S. R. Rambo and Company were not authorized to collect the principal of the notes of the complainant and in holding that the payment of the note on June 20, 1923, and the release of the said trust deed on June 21, 1923, were not expressly authorized by the complainant.

(b) If the defendants are in error in insisting that the proof shows express authority to collect the principal on said note and make said release then most assuredly the chancellor was in error in holding that S. R. Rambo and S. R. Rambo and Company did not have implied authority to receive payment of the note.

(c) The chancellor erred in holding that the complainant had not estopped and precluded himself from collecting said note on account of his dealing with S. R. Rambo and S. R. Rambo and Company over a period of twelve years and in permitting and acquiescing in the handling of his notes by S. R. Rambo and S. R. Rambo and Company in accordance with the custom, and practice which was kept and maintained in that office."

"II. The chancellor erred in sustaining the objections of the complainant to the following testimony:
The entire deposition of T. L. Brown.
The entire deposition of James A. Gleason.
The entire deposition of H. O. Bales."

"III. The chancellor erred in holding that the complainant had not failed to comply with the Statute of Tennessee requiring that he

pay a privilege tax for dealing in securities and obtain a license and in holding that he is not precluded and estopped from recovering any amount upon said note.''

''IV.   The chancellor erred in holding that the complainant had not been guilty of laches and had not therefore estopped himself from collecting said note.''

We do not think there is any essential difference in the facts of this case and the many others that have gone before it.   There is no estoppel here.   There is an utter lack of proof that T. E. Plyley, who owned the notes and who attempted to pay them to Rambo, did so upon the slightest influence or occasion upon the part of the complainant, or that in this particular instance he was influenced by any particular act or persuasion of the complainant.   The proof does not show that he even knew the complainant, or that complainant held the note, nor does the proof show that the maker of the note ever had any knowledge of any dealing of the complainant with S. R. Rambo or S. R. Rambo & Co.   The essential elements of estoppel are:

''In general the rule of equitable estoppel is that where one by his acts, declarations or silence, where it is his duty to speak, has induced another in reliance on such acts, declarations or silence, to enter into a transaction, he shall not, to the prejudice of a person misled, impeach the transaction.''   Smith v. Smith, 8 App. Cas., 332-334.

Mr. Bigelow sets out the essentials of estoppel, approved by our court in the case of Taylor v. Railroad Co., 86 Tenn., 228, 224 S. W., 393, to be:

''First: There must have been a representation or a concealment of material facts.

''Second: The representation must have been made with knowledge.

''Third: The party to whom it was made must have been ignorant of the truth of the matter.

''Fourth: It must have been made with the intention that the other party should act upon it.

''Fifth: The other party must have been induced to act upon it.'' Bigelow on Estoppel, 480.   Decherd v. Blanton, 35 Tenn. (3d Sneed), 372-374.

''Estoppel is a branch of the law of evidence, and has its foundation in fraud, not that there must be intentional fraud, but the person estopped is considered by his admissions, declarations, or conduct to have misled another to his prejudice, so that it would work a fraud to allow the true state of facts to be proven.''   Rogers v. Colville, 145 Tenn., 650, 258 S. W., 80.

''The act relied upon must have been done with the knowledge or intent that it should be relied upon by the victim.''   Rogers v. Colville, supra; Early v. Williams, 135 Tenn., 261, 186 S. W., 102.

In the case of Rogers v. Colville, supra; Early v. Williams, 135 Tenn., 261, 186 S. W. 102.

In the case of Rogers v. Colville, supra, it was observed:

"It was said by this court in the case of Crabtree v. Bank, 108 Tenn., 483, 67 S. W., 797:

" 'For it is essential as a general rule, to the application of the principal of equitable estoppel that the party claiming to have been influenced by the conduct or declarations of another to his injury, was himself not only destitute of knowledge of the state of the facts, but was also destitute of any convenient and available means of acquiring such knowledge; and that where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel.' " Brant v. Virginia Coal, etc. Co., 93 U. S., 326; Steel v. St. Louis Smelting, etc., Co., 106 U. S., 447; Storm v. Baker, 150 U. S., 312.

This is but another way of saying that the action or conduct of the party pleading estoppel was induced or brought about by the party against whom it is pleaded.

Not knowing anything about the complainant, and having no information as far as the proof shows of any dealings whatever between the complainant and Rambo, or Rambo & Co., how can it be said that any action of the complainant, whether intentional or otherwise, influenced the deceased maker of the note, Plyley, to pay the same to Rambo, as was done in this case. There is no doubt but what the proof shows that complainant is the innocent holder in due course of the note sued on, for which he paid full value shortly after it was executed, and that it remained in his hands until placed in the hands of his attorney to bring suit, as found by the chancellor. He did not notify the maker of the note that he held it, nor was he required to do so. Rambo had endorsed the note to him and guaranteed its payment in a full and ample obligation. Everyone had confidence in Rambo and his company, so far as the record shows, and they did a large business, which they apparently honorably conducted for many years, under such circumstances as to gain the complete confidence of the business public, who did not become aware of their criminal delinquencies until their failure and the flight of Rambo in 1924. Rambo conducted the business first as an individual, and later organized a company, which he controlled, and the business was conducted thereafter in the name of one or both, possibly as occasion might require. As stated in a former case, the confidence which he and his company enjoyed and the volume of business he transacted were exceptionally favorable for the perpetration of a scheme to enable him to play a dual role. The manner and customs in which the business was conducted is detailed in the depositions of T. L. Brown, James A. Gleason and H. O. Bales, which were excluded by the chancellor as incompetent and immaterial because T. E. Plyley did not know of the dealings of complainant with S. R. Rambo and S. R. Rambo & Co.,

and he therefore did not rely upon the dealings of the complainant with them. While we think the chancellor was correct as to the materiality of this testimony purely upon the question of estoppel, for unless it be shown that the said Plyley when he paid the note to Rambo had knowledge of such actions or dealings of the complainant with Rambo and his company which in effect held them out as having authority to receive payment, it is immaterial what those dealings were so far as the question of estoppel is concerned. Still we think upon the question of implied agency, which is beside the question of estoppel, the defendants had the right to prove this manner and custom of doing business, and the complainant's knowledge of it and his transactions with reference thereto, as bearing upon the question of actual agency, either express or implied, to receive the money on the note, thus effecting its satisfaction and the discharge of the lien. Assignment No. 2 is therefore sustained, and this testimony is admitted, but it is not meant thereby to approve any comment or expression of opinion by these witnesses upon the facts detailed.

We agree, however, with the opinion of the chancellor, that the investment in the note in controversy and others did not constitute a privilege taxable under the laws of the State of Tennessee, and also that there was a sufficient listing of this note for taxation, so that in event of recovery there is no impediment in the way of recovery of costs. Also in holding that complainant had not been guilty of laches, and that he had not estopped himself from collecting the note in question. Assignments three and four are therefore overruled.

There is no proof of express agency of either Rambo or his company in the record. There is therefore, but on question left for consideration. Does the proof show that Rambo had any implied authority to receive payment for the complainant and discharge the lien?

We do not think the evidence excepted to, when admitted, would establish agency or change the result. Rambo himself was obligated, through his endorsement and guarantee, to pay the note to the holder, who knew nothing of what his arrangements were or the extent of his contracts with the maker of the note. Rambo had the right to take up the notes in the hands of those to whom he had transferred them, for the purpose of himself collecting the notes and making the releases, and with many of his clients this may have been fully understood. And doubtless he had many clients for whom he acted as a general agent in the loaning of their money, with power of such complete action in the premises as the principals themselves might have enjoyed; and it is no doubt true, as we think from the record, that Rambo and his company assumed to so act in many instances when he did not have such authority, and in the exercise of such unauthorized assumption may have collected a few notes owned by the complainant, and at the time in the complainant's possession, as complainant had during the twelve or fourteen years dealing with him

many transactions, but the evidence does not show any general agency to act for the complainant. They dealt at arms length in each transaction. Complainant said: "I bought notes from them. I never brought them money and had them loan it for me. Never left any money and went back without papers. I came to the office and bought the papers, and took them home. I never left any money in their office to be loaned, never during my entire transaction." The shrewd and somewhat assumptive cross examination might make it appear that Rambo had such agency to collect, but a careful reading of the whole deposition does not bear out this conclusion. We think his action was not the result of any agency to do so generally, but in each instance was subject to the ratification of the complainant, and, of course, to the independent right of Rambo to discharge his own obligations assumed as guarantor. It may be that Rambo had authority to collect interest, but this did not constitute authority to collect the principal.

It may be that Rambo charged borrowers a commission for renewals, and it may be that they employed him to secure these renewals, but complainant did not know what Rambo's relations were with the borrowers, or what he charged or received. Rambo did not tell him, though he said he supposed Rambo must have received something, but so far as he was concerned he thought the seven per cent he gave to him was interest which he received from Rambo. We think what he knew of Rambo's transactions with others is just about what he detailed of his own transactions with Rambo, as is manifest from a careful reading of his entire deposition, and to this extent only in this regard do we agree with the findings of the chancellor. It does not follow that because Rambo made releases after notes had been paid to complainant that he was authorized to make them on notes upon which he had received money that he did not pay to complainant, nor does it impliedly make Rambo the general agent of complainant to receive money because he may have assumed to do so without the knowledge of complainant. To make him a general agent by implication, the proof should show that not only had he assumed such general agency, but that the circumstances were such as to indicate to the complainant that Rambo had and was assuming to act as his general agent in the reception of money on notes which he had endorsed to him, and that he had acquiesced in such assumption. We do not think the circumstances of this case sufficiently manifest a contract of agency thus effected, and when we are asked to find this as excusing the gross negligence of the makers of the note in paying the same to Rambo, without taking up the note or even asking to see it, we think the payment was made purely upon the assumption that Rambo owned the note, and that the makers should abide the consequences of their own folly. We do not think this case presents any reason as to why the complainant should be constituted the guardian of the maker of

the note, and be visited with liability as a penalty for not acting as such. Our Supreme Court said, in the case of Griswold v. Davis, 125 Tenn., 229:

"We are of opinion that as a general rule the debtor is not justified in paying the principal debt to an agent of the holder who is not expressly authorized to receive it, unless the agent, at the time of payment, has in his possession the securities paid and makes the fact known to the debtor, and, if the person to whom payment is made is not in possession of the written securities, the burden is upon the debtor to show that the one to whom payment was made had special authority to receive payment, or that he has been represented by the creditor to have such authority. There can be no basis for the debtor relying upon the apparent or ostensible authority of an agent not in possession of the written securities to receive payment. The mere act of paying the principal debt to one not the holder of negotiable instruments, and not in possession of them, is such gross negligence upon the part of the debtor that it is difficult to conceive how he could rely upon an apparent or ostensible authority of such agent to receive the payment. Possession of the securities properly endorsed of itself, and in the absence of countervailing facts, clothes the agent with apparent authority to receive payment from and deliver them to the debtor. And the absence of the securities in the hands of the alleged agent is such a powerful circumstance of want of authority, that one making payment to him can not claim that he appeared to have authority to receive payment, when in fact he did not.

"Agency rests upon contract between the principal and the agent. This contract cannot be made to appear to a third party by the declarations of the agent only, nor can the principal be held bound by a course of conduct upon the part of the agent unknown to him. For the acts of his agent within his express authority, the principal is liable because the act of the agent is the act of the principal. For the acts of the agent within the scope of the authority which he holds the agent out as having, or knowingly permits him to assume, the principal is made responsible, because to permit him to dispute the authority of the agent in such case would be to enable him to commit a fraud upon innocent persons. The same principle of equity which forbids the principal to deny responsibility for the acts of his agent within the scope of his apparent authority requires that the party dealing with the alleged agent shall show that he was aware of the acts from which the apparent authority is deduced, that he acted in reliance upon them, and that he did not act negligently, but used reasonable means to ascertain whether the power was possessed by the agent, and that in good faith he believed the agent was especially authorized to do the thing."

And again, in the case of Gosling v. Griffin, 1 Pickle, 737.

"Every maker of a negotiable paper knows, as a matter of law, that it is transferable, by endorsement, so as to pass the legal and complete title to the paper, and the debt evidenced thereby, and it is his duty to pay to the holder on the production of the note. Payments of negotiable paper before it is due, and in the absence of such paper, are not made in due course of business, and the party so paying should be held to do so at his own risk; for when the title has passed by endorsement and delivery of such paper the actual holder alone has the right to receive the money due thereon, and the maker, in paying the original payee after such transfer, in the absence of the paper, either before or after its maturity, must abide the consequences of making payment to a party not entitled to receive it. Our legislature, in providing indemnity for makers of lost negotiable instruments when sued thereon, proceed upon the principle that the actual legal holder thereof could lawfully compel a repayment to himself."

On the whole we agree with the conclusions of the chancellor, except as herein indicated, and his decree is affirmed, with costs, against appellants and their security, and the cause will be remanded for the purpose of carrying out the order of sale entered in the court below.

Portrum and Thompson, JJ., concur.