IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE

_____

**THE JUDDS, a Tennessee partnership,**
**NAOMI JUDD, both individually and**
**on behalf of PRO TOURS, INC., a**
**Tennessee corporation, and WYNONNA**
**JUDD, both individually and on behalf**
**of PRO TOURS, INC, a Tennessee**
**corporation,**

FILED

September 24, 1997

Cecil W. Crowson
Appellate Court Clerk

Plaintiffs-Appellants,

Davidson Circuit No. 94C-2578
CA. No. 01A01-9701-CV-00030

Vs.

**STEVEN D. PRITCHARD, an individual**
**and PRO TOURS, INC., a Tennessee**
**corporation,**

Defendants-Appellees.

_____

FROM THE SECOND CIRCUIT COURT FOR DAVIDSON COUNTY
THE HONORABLE MARIETTA M. SHIPLEY, JUDGE

Jay S. Bowen, John R. Jacobson, and Gregory S. Reynolds
Bowen, Riley, Warnock & Jacobson, PLC of Nashville
For Appellants

Samuel D. Lipshie and Scott K. Haynes
Boult, cumming, Conners & Berry, PLC of Nashville
For Appellee, Pritchard

*REVERSED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**SAM L. LEWIS, JUDGE**

This appeal involves the personal liability of a corporate officer. Plaintiffs, the Judds,

a Tennessee partnership; Naomi Judd, individually and on behalf of Pro Tours, Inc.; and

Wynonna Judd, individually and on behalf of Pro Tours, Inc.,[1] appeal from the judgment of the trial court granting summary judgment to defendant, Steven D. Pritchard.

The Judds performed together as a country music duo. From 1987 to 1994, Pro Tours served as their exclusive booking agent and principal promoter of their concerts.[2] Pritchard, Kenneth Stilts, and the Partnership each owned one-third of the stock of Pro Tours. Pritchard was the president of Pro Tours, and Pritchard and Stilts made up the board of directors. Stilts also served as personal manager for Naomi and Wynonna Judd.

Pro Tours arranged concerts for the Judds and negotiated their compensation. Generally, the Judds were compensated for performances promoted by Pro Tours solely on the basis of a percentage of gross receipts, less certain approved expenses, with no guaranteed payment. Pro Tours received fees and merchandising revenue for the Judds. Pro Tours also received corporate sponsorship fees for some of the Judds' concert appearances.

On August 9, 1994, the plaintiffs filed a complaint against Pritchard and Pro Tours alleging fraud, breach of fiduciary duty, breach of contract, unjust enrichment, and conversion, both against Pritchard individually and as a shareholder derivative suit on behalf of Pro Tours.[3] The complaint alleges that the plaintiffs were advised that Pro Tours was formed to maximize their profits from their concerts and that, instead, Pro Tours was intentionally managed and operated to maximize its own profits at the direct expense and detriment of the plaintiffs. The complaint alleges that Pritchard and Pro Tours owed the plaintiffs fiduciary duties, including a duty of loyalty and a duty to act solely in the plaintiffs' best interest. The plaintiffs allege that Pritchard and Pro Tours misrepresented the amount of income and expenses from the Judds' concert performances. The complaint also alleges that Pritchard and Pro Tours affirmatively concealed certain income from the plaintiffs, that Pritchard misused his position with Pro Tours to gain unfair personal benefits, and that Pritchard wasted corporate assets.

---

[1] Naomi and Wynonna Judd performed as a duo and will be referred to as The Judds. They operated as a partnership, which will be referred to as the Partnership. When it is necessary to consider the Judds and the Partnership together, they will be referred to as the plaintiffs.

[2] In the early 1990s, Wynonna Judd embarked on a solo career. Pro Tours and Pritchard worked for Wynonna Judd on these tours also.

[3] The complaint also requested an attachment of certain deposits to preserve and protect those funds.

On November 15, 1994, both Pro Tours and Pritchard filed answers denying the material allegations of the complaint. Pro Tours and Pritchard admit that the plaintiffs are entitled to certain deposits, but assert that some of the amounts due to the plaintiffs are subject to valid set-offs. Both answers raise other defenses to the complaint. In its answer, Pro Tours asserts a counter-claim against the plaintiffs alleging breach of contract, unjust enrichment, procurement of breach of contract, inducement of breach of contract, and breach of certain fiduciary obligations. Pritchard also filed a counter-claim alleging that the plaintiffs defamed him by publishing the untrue allegations in their complaint. On January 9, 1995, the plaintiffs filed an answer to Pritchard's counter-claim that denies his material allegations. On January 17, 1995, the plaintiffs filed an answer to Pro Tour's counter-claim that also denies those material allegations.

On October 26, 1995, Pritchard filed a motion for summary judgment. In his motion, Pritchard asserts that Stilts, the Judds' personal manager, was acting as the plaintiffs' agent with regard to all transactions involving Pro Tours, that his knowledge should be imputed to the plaintiffs, and that the plaintiffs should be estopped from asserting any claims related to the acts that Stilts ratified. Pritchard further asserts that the breach of fiduciary duty claim is barred by the applicable statute of limitations. Pritchard also asserts that he is not personally liable for any claims that the plaintiffs may have as a result of Pro Tours accepting corporate sponsorship fees for the Judds' concert appearances.

At the January 5, 1996 hearing on the motion for summary judgment, the plaintiffs raised three issues: 1) excessive bonuses paid to Pritchard by Pro Tours; 2) excessive compensation paid to Pritchard by Pro Tours; and 3) retention of corporate sponsorship fees by Pro Tours or Pritchard individually. On January 29, 1996, the trial court granted partial summary judgment in favor of Pritchard on the first two issues, both of which concerned the plaintiffs' claims in their capacities as shareholders of Pro Tours. The trial court found that Stilts was the Judds' agent, that his knowledge was imputed to them, and that the plaintiffs' claims as shareholders were therefore time-barred by the statute of limitation contained in T.C.A. § 48-18-601 (1995). The trial court took under advisement Pritchard's personal liability on the third issue. O n May 21, 1996, the trial court granted summary judgment in favor of Pritchard on the third issue, holding that Pritchard could not be held individually liable for acts committed as president of Pro

Tours. The trial court found that Pritchard did not act outside the scope of his duties and did not personally convert the plaintiffs' property. On October 23, 1996, the trial court entered an order pursuant to Tenn. R. Civ. P. 54.02 that made the summary judgment a final judgment.[4]

The plaintiffs appeal the judgment of the trial court and present one issue for review: whether the trial court erred in holding that Pritchard could not be held personally liable for fraud, conversion, or breach of fiduciary duty simply because he was acting as an officer of a corporation when he committed the wrongful acts.[5]

A trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Dunn v. Hackett*, 833 S.W.2d 78, 80 (Tenn. App. 1992). The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Byrd*, 847 S.W.2d at 210. On a motion for summary judgment, the court must consider the motion in the same manner as a motion for directed verdict made at the close of the plaintiff's proof; that is, "the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210-11. In *Byrd*, the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id*. at 211 (emphasis in original) (citations omitted). Where a genuine dispute exists as to any material fact or as to the conclusions to be drawn from those facts, a court must deny a motion for summary judgment. *Id.* (citing *Dunn*, 833 S.W.2d at 80).

The plaintiffs present four claims against Pritchard in his individual capacity: fraud, conversion, inducing breach of Pro Tours's fiduciary duty, and breach of his own fiduciary duty.

---

[4] Although Pro Tours has been dissolved and is essentially a "shell corporation," the plaintiffs' claims against Pro Tours remain active in the trial court.

[5] The plaintiffs have not appealed the trial court's judgment dismissing their shareholder derivative claims.

The plaintiffs pursued these claims as parties to a contract with the corporation, not as shareholders. The plaintiffs argue that a corporate officer who commits or participates in tortious conduct is personally liable for the consequences of that conduct, regardless of the liability of the corporation.

We agree that this is the law in Tennessee. It is settled law that an agent cannot escape liability for tortious acts, including fraud or misrepresentation, against third persons simply because the agent was acting within the scope of the agency or at the direction of the employer. *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 590 (Tenn. App. 1980). An officer of director of a corporation who commits or participates in the commission of a tort is likewise liable to third parties regardless of the liability of a corporation. *Id*. at 590-91.

Ordinarily a director of a corporation is an agent of the corporation and is liable only to the corporation. *Schlater v. Haynie*, 833 S.W.2d 919, 924 (Tenn. App. 1991). For a director to become directly liable to a creditor, there must be some violation of a statutory duty, some other conduct that establishes a privity of contract, or a tortious injury to the creditor for which an action *ex delicto* will lie. *Id.* (citing *Merriman v. Smith*, 599 S.W.2d 548 (Tenn. App. 1978)).

It is legally possible for Pritchard to be personally liable, but there must be *specific facts* showing that there is a genuine issue of material fact for trial concerning Pritchard's fraudulent actions. The plaintiffs argue that Pritchard is personally liable for defrauding them and converting their property because he directed and participated in a fraudulent scheme to cheat them out of a portion of their income. The plaintiffs assert that Pritchard intentionally caused Pro Tours to convert and conceal income received from corporate sponsorship fees, sales of concert tickets and merchandise, and rebates of expenses from them. The plaintiffs also argue that Pritchard paid himself enormous bonuses and arranged other personal benefits. On the other hand, Pritchard argues that he never received any of the corporate sponsorship fees individually and that the fees were always deposited into a Pro Tours account or used to pay expenses of the particular concert.

The trial court first examined the plaintiffs' claim of conversion and found that "no genuine issue of material fact exists from the evidence that the Plaintiffs have produced that indicates Mr. Pritchard is liable to the Judds individually for conversion." Before making this

5

finding, the trial court granted the plaintiffs more time "to supplement the record in this action with any proof that defendant Pritchard himself received money that should have been paid to plaintiffs."

In his deposition, Pritchard admitted that the plaintiffs did not share in some of the corporate sponsorship fees. He stated that the fees were either deposited into a Pro Tours bank account or were used to pay the expenses for a particular concert. Pritchard testified that he generally told representatives of the plaintiffs when a particular concert had a corporate sponsor, but did not always inform the plaintiffs when corporate sponsorship fees had been paid. Pritchard also did not disclose to the plaintiffs that Pro Tours was sharing in parking revenue and food and soda revenue. After the plaintiffs fired Pro Tours, Pritchard did not tell them about the receipt of additional corporate sponsorship fees.

The plaintiffs argue that the trial judge mistakenly concluded that Pritchard could not be personally liable for conversion unless he personally benefitted from the wrongful acts. "A conversion, in the sense of the law of trover, is the appropriation of the thing to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right." *Mammoth Cave Production Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. App. 1977) (quoting *Barger v. Webb*, 216 Tenn. 275, 391 S.W.2d 664, 665 (1965)). To be liable for conversion, the defendant need only have an intent to exercise dominion and control over the property that is in fact inconsistent with the plaintiff's rights, and to do so; good faith is generally immaterial. *Mammoth Cave*, 569 S.W.2d at 836.

The trial court found that the plaintiffs did not show a genuine issue of material fact indicating that Pritchard converted their income to his own use. The trial court stated, "[T]here is no showing that Mr. Pritchard exercised 'dominion and control,' that he diverted funds for his own use and enjoyment as president of Pro Tours."

We must respectfully disagree. Pritchard admits that funds due the plaintiffs were diverted to Pro Tours at his direction. The proof established that Pritchard was paid what could be termed excessive bonuses and other fringe benefits by Pro Tours. Pritchard was president of the corporation, and the record indicates that for all practical purposes he controlled the company. Under the circumstances, there could be an inference that the funds would ultimately inure to his benefit. It is conceivable that under these facts, the fact finder could determine that

6

there was a conversion by Pritchard of the plaintiffs' property.

The plaintiffs also alleged a claim of fraud against Pritchard. In its order, the trial court did not specifically address fraud. However, the trial court did state, "There is no showing that Mr. Pritchard negligently or fraudulently misrepresented the accounts to the Plaintiffs."

In order to sustain a cause of action for fraudulent misrepresentation, the plaintiff must show that: 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation. *Metropolitan Gov't of Nashville and Davidson County v. McKinney*, 852 S.W.2d 233, 237 (Tenn. App. 1992).

The plaintiffs argue that Pritchard intentionally supplied them with fraudulent accountings on which they relied. They assert that this is part of the fraudulent scheme to conceal and convert their income. The plaintiffs argue that they have adduced substantial evidence to support their fraud claim. They rely upon Pritchard's deposition in which he admits that all income was not disclosed to the plaintiffs although they were led to believe that the various accountings presented to them were complete and correct.

Concealment or nondisclosure will give rise to a claim for fraud when the defendant has a duty to disclose and when the matters not disclosed are material. *Dobbs v. Guenther,* 846 S.W.2d 270, 274 (Tenn. App. 1992). There are genuine issues of material fact as to whether there was a negligent or fraudulent misrepresentation.

The plaintiffs next assert that Pritchard should be held personally liable because he caused Pro Tours to breach its fiduciary duties while Pro Tours was acting as an agent for the Judds. Agency rests upon contract between the principal and the agent. *Cline v. Plyly*, 3 Tenn. App. 292, 301 (1926). An agent is simply "[o]ne who undertakes to transact some business, or to manage some affair, for another, by the authority and on account for the latter, and to render an account of it." *Security Federal Sav. & Loan Ass'n of Nashville v. Riviera, Ltd.*, 856 S.W.2d 709, 715 (Tenn. App. 1992) (quoting *Miller v. Insurance Co. of North America*, 211 Tenn. 620, 625, 366 S.W.2d 909, 911 (1963)). "Agency in its broadest sense includes every relation in which one person acts for or represents another." *Kerney v. Aetna Cas. & Surety Co.*,

648 S.W.2d 247, 252 (Tenn. App. 1982) (quoting *Howard v. Haven*, 198 Tenn. 572, 583, 281 S.W.2d 480, 485 (1955)). "Whether an agency has been created is to be determined by the relations of the parties as they in fact exist under their agreements or acts. If relations exist which will constitute agency, it will be an agency, whether the parties understood it to be or not." *Id*. at 252-53 (quoting *Smith v. Tennessee Coach Co.*, 183 Tenn. 676, 680-81, 194 S.W.2d 867, 869 (1946)). The relation of principal and agent is a trust relation. *McNeill v. Dobson-Bainbridge Realty Co.,* 184 Tenn. 99, 106, 195 S.W.2d 626, 629 (1946).

In essence, the plaintiffs are asserting that Pritchard interfered with the contractual relationship between Pro Tours and the plaintiffs by causing a breach of fiduciary duty owed by Pro Tours to the plaintiffs as their agent. In *Forrester v. Stockstill*, 869 S.W.2d 328 (Tenn. 1994), our Supreme Court, in considering an issue concerning intentional interference with corporate employment, quoted with approval from Thomas G. Fischer, Annotation, *Liability of Corporate Director, Officer, or Employee for Tortious Interference with Corporation's Contract with Another*, 72 A.L.R.4th 492 (1989) as follows:

> Some courts have recognized that generally a corporate director, officer, or employee is not liable for tortiously interfering with a corporate contract, because he is considered a party to the contract, as long as he is acting to serve the corporate interests, or unless his activity involves individual separate tortious acts. Courts have also recognized, however, that a corporate director, officer, or employee may be liable for tortiously interfering with a corporate contract if he is acting outside the scope of his authority, acting with malice, or acting to serve his own interests.

869 S.W.2d at 333 (quoting 72 A.L.R.4th at 501). Although *Forrester* dealt with a breach of an employment contract, the authority cited by the Supreme Court makes no distinction in the type of contract, nor do we find any. The substance of the issue is breach of a duty and not the nature of the duty itself.

As we have heretofore noted, there is a genuine issue as to material fact concerning Pritchard's actions and whether he was acting to serve his own interest by being instrumental in the diversion of funds to Pro Tours's accounts. Accordingly, summary judgment should not have been granted on the plaintiffs' action based upon Pritchard's inducing the breach of Pro Tours's fiduciary duty.

The plaintiffs also allege that Pritchard personally owed them a fiduciary duty because he was acting as their subagent and undertook to perform Pro Tours's obligations to them. The

plaintiffs cite *The Prudential Botts & Assocs. v. Gupton*, No. 03A01-9403-CH-00087, 1994 WL 398826 (Tenn. App. Aug. 1, 1994), for the proposition that Tennessee recognizes the concept of subagency. In *Prudential Botts*, this Court found that the subagent's actions bound the agent and, therefore, held against the agent. *Prudential Botts*, 1994 WL 398826, at *6. In this case, we believe that Pritchard's actions as a subagent bind Pro Tours and that Pro Tours is responsible for his actions. Pritchard's actions as a subagent are still on behalf of and through Pro Tours, and his actions within the apparent scope of his authority are those of the corporation. *Batey*, 446 S.W.2d at 694.

Needless to say, this case presents a complicated mass of factual allegations dealing with a somewhat unique business. The facts introduced at this stage of the proceedings present a close question concerning genuine issues of material facts. Justice Harbison, speaking for our Supreme Court in *Evco Corporation v. Ross*, 528 S.W.2d 20 (Tenn. 1975), said:

> The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

*Id.* at 24, 25.

The order of the trial court granting summary judgment is reversed. The case is remanded for such further proceedings as are necessary. Costs of the appeal are assessed against appellee.

                                _____

                                **W. FRANK CRAWFORD,**
                                **PRESIDING JUDGE, W.S.**

_____

**DAVID R. FARMER, JUDGE**

_____

**SAM L. LEWIS, JUDGE**